IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JAKE C. PELT, ET AL., FOR THEMSELVES AND FOR AND ON BEHALF OF A CLASS OF PERSONS consisting of all Navajo Indians residing in San Juan County, Utah, including a sub-class of persons consisting of all other Indians the Secretary of Interior saw fit to settle on lands described in the 1933 Act [47 Stat. 1418] prior to May 17, 1968,<br><br>                    Plaintiffs,<br><br><br><br>          vs.<br><br><br><br>STATE OF UTAH,<br><br>                    Defendant. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br><br><br><br><br>Case No. 2:92-CV-639 TC |

In this class action brought by beneficiaries of the Navajo Trust Fund, the court is currently faced with the issue of the scope of an equitable accounting that the Plaintiffs seek from the Fund trustee, Defendant State of Utah. The parties agree that an accounting is due, but they disagree on the years and extent of the accounting. In particular, the State of Utah raises the affirmative defense of res judicata (i.e., claim preclusion), contending that a significant portion of the Plaintiffs' accounting claim is barred by the preclusive effect of three earlier cases addressing Utah's management of the Fund: Sakezzie v. Utah State Indian Affairs Commission ("Sakezzie") (filed in 1961), Jim v. State of Utah ("Jim") (filed in 1970), and Bigman v. Utah Navajo

Development Council, Inc. ("Bigman") (filed in 1977).

This matter comes before the court on Plaintiffs's motion for summary judgment asking the court to reject the State's defense.  (See Plaintiffs' Summ. J. Mot. re: Adequacy of Representation and Sufficiency of Prior Accountings (Docket No. 970).)  Also pending before the court are three motions to strike:

1.      "Defendant's Objection and Motion to Exclude or Limit Plaintiffs' Purported Expert Testimony" (Docket No. 982);

2.      "Plaintiffs' Motion to Strike Declarations (Blake & Larson)" (Docket No. 991); and

3.      "Plaintiffs' Objection and Motion to Limit Testimony of Harold Christensen" (Docket No. 995).

The central issue raised in the Plaintiffs' summary judgment motion is whether the Plaintiffs, who were not named parties in the three cases, were adequately represented in the three cases so that they are bound by the judgments in Sakezzie, Jim, and Bigman.  The Plaintiffs contend that they were not adequately represented and so are not bound.

For the reasons set forth below, the court holds that the Plaintiffs are not bound by the judgments in Sakezzie, Jim, or Bigman.

## PROCEDURAL AND FACTUAL BACKGROUND[1]

In 1933, the federal government established the Navajo Trust Fund, from which 37.5% of royalties derived from exploitation of oil and gas deposits under the Navajo Reservation's Aneth Extension[2] would be paid to the State of Utah, providing that such funds be spent for the health, education, and general welfare of the Indians residing in the Aneth Extension.  Congress later amended the beneficiary class to include all Navajo Indians living in San Juan County, Utah.  See An Act to Permanently Set Aside Certain Lands In Utah As An Addition To The Navajo Reservation, And For Other Purposes, 47 Stat. 1418 (1933), amended by Pub. L. No. 90-306, 82 Stat. 121 (1968) (hereinafter "1933 Act"); see also Pelt v. Utah, 104 F.3d 1534, 1538-39 (10th Cir. 1996).

Plaintiffs Jake C. Pelt and other named individuals ("Plaintiffs"), members of the beneficiary class, have brought this suit for an equitable accounting from Utah, the trustee of the Navajo Trust Fund.  They allege that Utah breached its fiduciary duty to the Plaintiff class when it allegedly mismanaged the Fund.

On December 20, 2002, the court issued an Order[3] denying the parties' cross motions for summary judgment on the preclusive effect of Sakezzie, Jim, and Bigman.  In that 2002 Order, the court addressed whether the Plaintiffs were barred by the doctrine of res judicata from asserting claims for accounting for the years covered by the three suits.

---

[1]The facts are taken from the record before the court, which does not contain a genuine issue of material fact.

[2]The Aneth Extension (the ancestral home of Navajo Indians and other Native Americans) was added to the Navajo Reservation in 1933.

[3]Docket No. 898.

According to the doctrine of res judicata, a later suit is barred by an earlier suit when

(1) the earlier suit resulted in a final judgment on the merits, (2) the earlier suit involved the same

cause of action raised in the later suit, and (3) the parties in the later suit and the earlier suit were

the same or in privity with each other.  King v. Union Oil Co. of Cal., 117 F.3d 443, 445 (10th

Cir. 1997).  In the court's 2002 Order, the court held that the first and second element of the res

judicata requirements had been established, but the court held that it could not rule on the last

element—whether the plaintiffs in the suits at issue are in privity with each other.  As explained

more fully below, the question of privity involves the question of whether the Pelt plaintiffs were

adequately represented by the plaintiffs in Sakezzie, Jim, and Bigman.  And that is the central

issue raised in the motion for summary judgment before the court.

**The Three Cases**

1.     Sakezzie v. Utah State Indian Affairs Commission et al. (Case No. C-55-
61 (D. Utah 1961))

The Sakezzie complaint was filed on April 2, 1961, on behalf of the named plaintiffs and

"as representatives of and members of the class of persons who are Navajo Indians residing

within the Aneth Extension of the Navajo Indian Reservation in San Juan County, Utah."

(Sakezzie Compl. at 1 (in caption), attached as Ex. U to Pls.' Mem. Supp. Mot. Summ. J.)  The

Sakezzie case was a class action, but it was not certified as a class action or subject to the current

(and more stringent) rules governing class actions under Federal Rule of Civil Procedure 23 (as

substantially amended in 1966).  See Jones v. Caddo Parish Sch. Bd., 735 F.2d 923, 924 n.1 (5th

Cir. 1984) ("Rule 23 as then in effect [i.e., pre-July 1, 1966 amendment] did not provide for class

certification.").

4

In their complaint, the plaintiffs requested an accounting of all Fund monies and alleged

that none of the expenditures had been for their use and benefit.

> Plaintiffs . . . allege that considerable money, exceeding two million dollars, have
> [sic] been earned from said royalties . . . .

> Plaintiffs . . . allege that considerable amounts of money have been expended by
> defendants, or by the officers, agents and employees of the State of Utah, from
> said 37-1/2% fund monies.  Defendants have refused to advise plaintiffs as to any
> of said expenditures.  No expenditures from said fund have been for the use and
> benefit of plaintiffs. . . .

> [Plaintiffs demand] [t]hat defendants be required to prepare and submit . . . to
> plaintiffs an accounting of all of said 37-1/2% fund . . . .

(Id. at p. 2 ¶¶ 5 & 7, and p. 6 ¶ 2.)  The case was tried to the court without a jury on June 12,

1961.

The Honorable A. Sherman Christensen gave an oral opinion in which he concluded that

there was no reason to question the Fund disbursements made for administrative services,

salaries, travel, or current expenses.  (June 12, 1961 Oral Opinion of the Court at 14, attached as

Ex. 3 to Docket No. 870.)[4]  He specifically stated that

> [t]he matter of accounting has been rendered moot by pretrial discovery, I believe,
> and also by the evidence which indicates that the agencies of the Federal
> Government have been receiving and paying over to the State the funds in question, leaving the
> problem of accountability in the area of disbursements, rather than checking of receipts.

(Id. at 18-19.)  His reference to "pretrial discovery" refers to the defendants' answer to some of

---

[4]The court refers to docket numbers because at least one of the parties' briefs refers to
exhibits submitted earlier in the case with other pleadings.  (See, e.g., Def.'s Opp'n to Pls.' Mot.
For Summ. J. at p. 4 n.1 ("Rather than resubmit evidence previously submitted to the Court,
defendant refers the Court to its previous filings on the issue of res judicata, incorporated herein
by reference . . . .").)  Accordingly, rather than giving the name of the pleading, which may be
confusing to the reader, the court lists the docket number to allow for easy accessibility to the
record.

the plaintiffs' interrogatories.  The answer contained an abbreviated explanation of expenditures from the fund, none of which was supported by backup documentation.  (<u>See</u> Sakezzie Defs.' Answer to Pls.' Interrogatories, attached as Ex. BB to Pls.' Mem. Supp. Mot. For Summ. J.)  The court's reference to "evidence which indicates that the agencies of the Federal Government have been receiving and paying over to the State the funds in question" does not make clear to what "evidence" the court is referring, nor does the record in this case provide further explanation. Nothing in the record shows that the plaintiffs objected to the court's reliance on the answer to the interrogatory as sufficient to moot the claim for an accounting.

On August 25, 1961, Judge Christensen entered written Findings of Fact and Conclusions of Law, in which he found that the Utah defendants "have not kept the plaintiffs and those represented by them reasonably informed concerning the amounts received in said fund and as to expenditures from said fund; but in the course of this proceeding have fully informed the plaintiffs of such receipts and expenditures." <u>Sakezzie v. Utah Indian Affairs Comm'n</u>, 198 F. Supp. 218, 222 (D. Utah 1961) ("<u>Sakezzie I</u>").  The court also stated that

> the proper administration and expenditure of said fund makes desirable the availability to the beneficiaries and their representatives of reasonably accurate, complete and current information concerning the receipts[,] expenditures and projects of the defendants.  <u>That beyond the mere legal right to this information or its availability from other sources, proper understanding and cooperation probably will be advanced</u>, the effective expression and consideration of views and suggestions will be promoted in harmony with the statute and the policy of the Federal government toward the Indians, <u>and the administration of the fund will be more in keeping with such statutes and policy if an affirmative program to this end is carried out by the defendants</u>.

<u>Id.</u> at 225-26 (emphasis added).  Plaintiffs did not appeal the court's findings of fact and conclusions of law.

A year later, on July 2, 1962, plaintiffs filed a post-judgment petition with the court for

supplemental relief enforcing the court's 1961 judgment and decree.  In their Petition, the

plaintiffs sought injunctive relief, alleging that the defendants were not complying with the

court's judgment and decree.[5]  Specifically, they alleged (among other things) that the defendants

were refusing to provide information concerning receipts and disbursement of the fund.  The

plaintiffs sought monthly reports of receipts and expenditures.  (See Sakezzie Pls.' July 2, 1962

Petition at 2-5, attached as Ex. 4 to Docket No. 870.)

The court issued a Memorandum of Decision on February 7, 1963, in which it reiterated

that

> defendants have kept full and proper accounts of the funds received by them
> which are computed and transmitted by Federal authority.  They, however, have
> demonstrated remarkable unconcern about keeping the beneficiaries of the fund
> informed of accretions to said fund, about disbursements and commitments
> therefrom and about plans with respect to future expenditures . . . .

Sakezzie v. Utah Indian Affairs Comm'n, 215 F. Supp. 12, 18 (D. Utah 1963) ("Sakezzie II").

The court further stated that its former findings of fact and conclusions of law "endeavored only

gently to indicate the duty of the defendant State officials with regard to the furnishing of

information to the plaintiffs. . . ."  Id.  But the court said

> [i]t is clear to the court that the defendants have not discharged their duty in that
> respect. . . . [A]nd it is no answer to say that the information could be ferreted out
> from their records by the plaintiffs.  . . .  It does not seem unreasonable, indeed it
> seems essential, to recognize that a program for the affirmative disclosure of
> available information as to the plaintiffs is indispensable for the proper discharge
> of the defendants' trust . . . .

---

[5]The judgment was not reported, but the court's subsequent decision on the petition
summarizes the judgment's main provisions.  See Sakezzie v. Utah Indian Affairs Comm'n, 215
F. Supp. 12, 14 (D. Utah 1963) ("Sakezzie II").

7

Id. at 18-19 (emphasis added).  The court ordered the defendants to provide monthly reports of

receipts and expenditures to the plaintiffs.  Id. at 24. (See also Sakezzie Feb. 25, 1963

Supplemental J. & Decree, attached as Ex. 8 to Docket No. 870.)

On May 12, 1964, the plaintiffs in Sakezzie filed another petition, again seeking relief

from the defendants' alleged failure to comply with the court's two earlier orders.  (See May 12,

1964 Sakezzie Pls.' Petition, attached as Ex. V to Pls.' Mem. Supp. Mot. For Summ. J.)  The

record does not show any further activity in the Sakezzie case until more than a year later, when

the court held a hearing on June 7, 1965, regarding its order to show cause why the 1964 petition

should not be dismissed for failure to prosecute.  The Sakezzie plaintiffs' attorney did not attend,

and the court dismissed the petition.  (See June 7, 1965 Minute Entry in Sakezzie, attached as Ex.

W to Pls.' Mem. Supp. Mot. For Summ. J.)  On June 9, 1965, two days after the hearing, the

Sakezzie plaintiffs' attorney filed a Motion for Reinstatement of Its Pending Petition.  The court

denied the motion on June 21, 1965, but granted the Sakezzie plaintiffs leave to file another

petition.  Despite permission to do so, the plaintiffs did not file another petition.  (See Defs.'

Opp'n Mem. at 7 (admitting facts set forth in Pls.' Mem. Supp. Mot. For Summ. J. at ¶¶ 30-33).)

The June 9, 1965 dismissal for failure to prosecute appears to be the end of the Sakezzie suit.

2.    Jim v. State of Utah et al. (Case No. C-21-70 (D. Utah 1970))

Jim was filed as a class action on February 7, 1970.  The named plaintiffs were members

of a class consisting of approximately 1500 Navajo and other Indians residing on the Aneth

Extension of the Navajo Reservation.  (See Jim Compl. at pp. 1-2 ¶ 4, attached as Ex. B to Pls.'

Mem. Supp. Mot. For Summ. J.)  Although the main focus of Jim was the constitutionality of the

1968 Amendment, which expanded the beneficiary class,[6] the complaint also alleged that Utah

had breached its fiduciary duty by spending funds on non-beneficiaries.  (Id. at p. 6 ¶ 13; Jim

Am. Compl. at p. 6 ¶ 13, attached as Ex. 10 to Docket 870.)  The Jim complaint contained the

following allegation:

> Plaintiffs . . . allege . . . that the [defendants] . . . are using and disbursing the said
> 37 1/2% of such royalties received by the State of Utah in breach of their fiduciary
> duty to plaintiffs by expending the same for the benefit of persons . . . who have
> no beneficial interest or other right therein and not for the benefit of plaintiffs.

(Jim Am. Compl. at p. 6 ¶ 13.)  The plaintiffs requested an accounting of monies received and

spent from such royalties.  (Id. at p. 7 ¶ 2 ("plaintiffs pray for . . . an order of this court that [the

defendants] account for all monies received from said 37 1/2% of net royalties . . . and for the

disbursement of said monies . . . .").)

On December 30, 1970, the Honorable Willis Ritter certified the case as a class action

under Federal Rule of Civil Procedure 23(b)(2).  (See Dec. 30, 1970 Order at 2, attached as Ex.

11 to Docket No. 870.)  In the December 30, 1970 Order, Judge Ritter stated that "the case has

sufficient notoriety that no further notice to members of the class is necessary . . . at the present

stage of the proceeding."  (Id. at 1-2.)

The case was tried without a jury and Judge Ritter entered an Interlocutory Decree and

Order on February 7, 1972, declaring the 1968 amendment unconstitutional and ordering Utah to

file the monthly reports which had previously been ordered in Sakezzie.  (See Feb. 7, 1972

Interlocutory Decree & Order at 3 (attached as Ex. 12 to Docket No. 870) (ordering Jim

---

[6]See United States v. Jim, 409 U.S. 80, 82 (1972) (holding that expansion of beneficiary
class was not taking of property because beneficiaries did not have constitutionally protected
property rights in the Navajo Trust Fund).

defendants to "file with the Court those monthly written reports decreed in [Sakezzie] for the periods from February 25, 1963 to May 17, 1968, and from May 17, 1968 to the present").)  The court's decision regarding the 1968 amendment was appealed to the United States Supreme Court, which reversed Judge Ritter's finding that the 1968 amendment was unconstitutional.  See United States v. Jim, 409 U.S. 80, 82-83 (1972).

On remand, following a January 9, 1974 hearing, Judge Ritter held that the accounting ordered in the court's February 7, 1972 Interlocutory Decree & Order had not been done and that the plaintiffs were entitled to an accounting.  (Feb. 7, 1974 Order at 2, attached as Ex. Y to Pls.' Mem. Supp. Mot. For Summ. J.).  Specifically, he ordered the defendants to file with the court "a complete, comprehensive, proper, lawful accounting showing, for two periods, to-wit, up to May 17, 1968 and from May 17, 1968 to the present [February 1974]" and consisting of various types of information listed in the Order.  (Id.)

During a July 14, 1975 hearing, plaintiffs' counsel told the court that "[a]n accounting and abstract was filed with the court, and the plaintiffs do not object to that."  (Transcript of July 14, 1975 Hearing at 2, attached as Ex. 18 to Docket No. 870.)  Nothing further regarding the "accounting and abstract" was discussed at the hearing, so the transcript does not identify the documents to which the Jim plaintiffs were referring.  But the record does contain an "Abstract of Minutes and Financial Statements of Defendant Utah Board of Indian Affairs" filed by the defendants on February 7, 1974, the same day the hearing was held.  (See Ex. 15 to Docket No. 870.)[7]  The pleading contained the following statement:

_____

[7]The court notes that on February 7, 1974, the Jim defendants filed what they referred to as "Accounting of Defendant Utah Board of Indian Affairs With Regard To Receipts And

> The parties have heretofore <u>stipulated</u> that, <u>pending final action</u> on defendants'
> appeal from the Decree and Order entered herein on February 17, 1972, <u>an</u>
> <u>abstract of minutes and financial statements</u> of the Utah Indian Affairs Board
> since Feb. 25, 1963, <u>may be filed with the court in lieu of compliance with the</u>
> <u>reporting requirements of paragraph 4 of said Decree and Order</u>, without,
> however, prejudice to the Court's right to require further reporting or accounting
> with respect to matters involved in the case.

(<u>Id.</u> at 1 (emphasis added).)

At a hearing almost one year later (May 25, 1976), Judge Ritter again ordered an

accounting after the parties indicated that one had yet to be completed.  (<u>See</u> Transcript of May

25, 1976 Hearing at 13-14, 16-17, attached as Ex. 19 to Docket No. 870.)  At the very end of the

hearing, Judge Ritter said

> I think we should pursue <u>the accounting matter</u> of course.  I think that is the <u>most</u>
> <u>important part of the lawsuit</u>, really.  The legal points are settled now.  Let's have
> an accounting of what the state's been doing with the Indians' money.  That's the
> short question that we need to go into and let's pursue it.

(<u>Id.</u> at 17 (emphasis added).)

Despite Judge Ritter's edict, no further action was taken on the case until the Honorable

Bruce Jenkins (who apparently inherited the case from Judge Ritter) held a hearing on December

29, 1978, on the court's order to show cause why the case should not be dismissed for failure to

prosecute.  After hearing arguments from counsel, and with no cause having been shown why the

action should not be dismissed, Judge Jenkins ordered the case dismissed.  (<u>See</u> Dec. 29, 1978

Order of Dismissal, attached as Ex. 21 to Docket No. 870.)  Rule 41(b) of the Federal Rules of

---

Expenditures From February 25, 1963 Through May 17, 1968" in response to an oral order of the
court made on June 9, 1973.  (<u>See</u> Ex. Q attached to Pls.' Mem. Supp. Mot. For Summ. J.)  But
this "accounting" was filed before Judge Ritter held on February 7, 1974, that no accounting had
been done.  (<u>See</u> Feb. 7, 1974 Order at 2.)

Civil Procedure, which describes the effect of an involuntary dismissal, states (as it did in 1978) that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication on the merits (i.e., is with prejudice)."

The 1978 Order of Dismissal, which did not specify that dismissal would be without prejudice, appears to be the last word on the Jim case.

      3.     Bigman v. Utah Navajo Development Council, Inc., et al. (Case No. C-77-31 (D. Utah 1977))

The Bigman case was filed on February 7, 1977, by Seth Bigman and Martha Collins. The case was not filed as a class action but the complaint said it was "an action by Navajo Indians as beneficiaries of an oil royalty trust fund seeking to preserve and protect the fund from defalcations and misexpenditures."  (Bigman Compl. at 1, attached as Ex. C to Pls.' Mem. Supp. Mot. For Summ. J.)  Indeed, counsel for the Bigman plaintiffs specifically avoided filing the matter as a class action because of tensions between the original beneficiaries and the new beneficiaries created by the 1968 amendment.  (See Defs.' Opp'n Mem. at p. 18; Pls.' Mem. In Supp. Mot. For Summ. J. at ¶ 119.)

The Bigman plaintiffs alleged that the defendants had breached their fiduciary duty, and requested an accounting and recovery of all money which had been wrongfully expended from the Fund.  (Bigman Compl. at p. 8 ¶ 26, p. 9 ¶ 3.)  Specifically, the plaintiffs alleged:

> This is an action by Navajo Indians as beneficiaries of an oil royalty trust fund, seeking to preserve and protect the fund from defalcations and misexpenditures.
>  . . . .
> Defendants' failure to effectively account for the expenditures of the 37 1/2 % oil royalty funds, and to provide an adequate accounting to Plaintiffs and the bulk of the beneficiaries constitutes a breach of fiduciary duty . . . .

(Id. at p. 1 and p. 8 ¶ 26.)  The Bigman plaintiffs requested an order "that the Defendants account

to Plaintiffs for all monies received from the 37 1/2 % oil royalties; and separately, for the disbursement of all of said monies." (Id. at p. 8 ¶ 29(a).)

On August 8, 1977, seven months after the case was filed, the parties settled. (See Stipulation of the Parties, attached as Ex. J to Pls.' Mem. Supp. Mot. For Summ. J.)  The settlement provided for a review of questionable transactions, a review of the Utah Navajo Development Council's (UNDC) accounting and management practices, and a review of the medical clinics at Montezuma Creek, Mexican Hat, and Navajo Mountain.  (Bigman Sep. 8, 1977 Stipulated J. & Decree, attached as Ex. K to Pls.' Mem. Supp. Mot. For Summ. J.)  Because the Bigman case was not a class action suit, no official notice was provided to non-party beneficiaries concerning the proposed settlement or the court's review and acceptance of the parties' agreement.  (See Defs.' Opp'n Mem. at 24;  Pls.' Mem. Supp. Mot. For Summ. J. at ¶ 151.)

Based on the stipulated judgment and decree, the parties retained Dr. Roger Nelson to review the questioned transactions, the accounting and management practices of UNDC, and the operation and management of the medical clinics.  Dr. Nelson filed his report with the court on December 12, 1977.  (See Ex. 72 attached to Docket No. 870.)  Apparently the Nelson Report, although apparently available for inspection by members of the public, was not publicly distributed.

By stipulation of the parties, two remaining issues were presented to the Honorable Aldon Anderson without trial.  Those issues were articulated as follows:

> 10.    Plaintiffs assert that the oil royalty trust funds are not public funds, and may not be used for public purposes, or to discharge any general governmental obligation to Plaintiffs and other Navajo beneficiaries.  Plaintiffs

further assert that Defendants are in fact expending the oil royalty funds for public and governmental purposes, in violation of federal law and the precedents of this Court.  Plaintiffs further charge that these complained of expenditures have supplanted governmental benefits due Plaintiffs and other Navajo beneficiaries, and that as a result various governmental agencies and entities have withheld programs and benefits that otherwise would have been made available to Plaintiffs and other Navajo beneficiaries.  The Defendants have denied these allegations. The Court shall set this controversy for trial, and issue a declaratory judgment, pursuant to 28 U.S.C. 2201, 2202.

       11.     Plaintiffs assert that Defendants must implement a program of Navajo Indian preference in employment practices and hiring in the administration and expenditure of the oil royalty trust fund.  Defendants assert such employment preference would be unlawful.  The Court shall set this controversy for trial, and issue a declaratory judgment pursuant to 28 U.S.C. 2201, 2202.

(Sep. 8, 1977 Judgment & Decree at ¶¶ 10-11, attached as Ex. K to Pls.' Mem. Supp. Mot. Summ. J.)  In the Decree, the court stated that it was not limiting the plaintiffs' or other beneficiaries' "right to seek relief from violations of the law in the administration and expenditure of the oil royalty trust funds as may occur subsequent to the filing of this decree." (Id. at ¶ 13.)

On September 25, 1978, Judge Anderson issued a Memorandum Opinion addressing the issues.  (See Sep. 25, 1978 Mem. Op. in Bigman v. UNDC, Case No. 77-0031.)  The court determined that the preferential employment practices issue did not present a justiciable controversy, and so the court refrained from issuing a declaration.  (Id. at 2-3.)  The court then found that, on the record before it, the court was "unable to ascertain whether the State of Utah has exceeded its authority or abused its discretion in directing the use of the funds for [certain specified purposes]. . . . The court declines to determine the lawfulness of specific expenditures of the funds due to the absence of any evidentiary basis for doing so."  (Id. at 7.)

In 1983, attorney Steven Boos took over representation of the Bigman plaintiffs,

replacing lead counsel Eric Swenson.

On December 5, 1984, Judge Anderson issued a Judgment and Decree (the court had retained continuing jurisdiction), based on the <u>Bigman</u> parties' stipulation, regarding the organization of the UNDC and Utah Navajo Industries, Inc. (UNI).  (Dec. 5, 1984 J. & Decree, attached as Ex. 75 to Docket No. 870;  Nov. 29, 1984 Stipulation of Parties, attached as Ex. 74 to Docket No. 870.)

In 1989, the <u>Bigman</u> court issued a Stipulation and Joint Motion and Order granting the UNI additional time to repay money it owed to the Navajo Trust Fund.  (See Dec. 18, 1989 Order, attached as Ex. I to Pls.' Mem. Supp. Mot. For Summ. J.)  By this time, the former <u>Bigman</u> plaintiffs' attorney Eric Swenson had switched sides and was representing the defendant UNDC.  (<u>See</u> <u>id.</u> at 4.)

The record does not show any further court activity in the <u>Bigman</u> case.


## ANALYSIS

### Legal Standards

#### Summary Judgment

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c);  see <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-51 (1986); <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 670 (10th Cir. 1998).  The court must "examine the factual record and reasonable inferences

therefrom in the light most favorable to the party opposing summary judgment." <u>Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir. 1990).

**Burden of Proof**

The State of Utah, which has raised the affirmative defense of claim preclusion, has the burden to establish that privity, or adequacy of representation, existed in the cases of <u>Sakezzie</u>, <u>Jim</u>, and <u>Bigman</u>.  (Dec. 20, 2002 Order (Docket No. 898) at 17 (citing <u>Nwosun v. General Mills Restaurant</u>, 124 F.3d 1255, 1257 (10th Cir. 1997).)

## Claim Preclusion: Adequacy of Representation

Constitutional due process prohibits preclusive application of an earlier judgment to a non-party unless that party was in privity with the parties in the earlier suit.  <u>Richards v. Jefferson County, Ala.</u>, 517 U.S. 793, 797 n.4 (1996).  "Res judicata, or claim preclusion, precludes a party <u>or its privies</u> from relitigating issues that were or could have been raised in an earlier action, provided that the earlier action proceeded to a final judgment on the merits." <u>King v. Union Oil Co. of Cal.</u>, 117 F.3d 443, 445 (10th Cir. 1997) (emphasis added).  "To apply the doctrine of res judicata, three elements must exist: (1) a judgment on the merits in an earlier action; (2) <u>identity of parties or privies in the two suits</u>; and (3) identity of the cause of action in both suits." <u>Id.</u> (emphasis added).

In the December 20, 2002 Order, the court found that the first and third elements have been established.  (<u>See</u> Docket No. 898.)  The issue here is whether privity existed between the

parties[8] to the suits of <u>Sakezzie</u>, <u>Jim</u>, and <u>Bigman</u>, and the Plaintiffs in this case.

"Privity is essentially the concept of legal similarity—who are the parties and whether they are legally identical." <u>Yankton Sioux Tribe v. Gambler's Supply, Inc.</u>, 925 F. Supp. 658, 664 (D.S.D. 1996). In the Tenth Circuit, the issue of whether privity exists is a question of fact. <u>Lowell Staats Mining Co., Inc. v. Philadelphia Elec. Co.</u>, 878 F.2d 1271, 1276 (10th Cir. 1989). "There is no definition of 'privity' which can be automatically applied to all cases involving the doctrines of res judicata and collateral estoppel. Privity requires, <u>at a minimum</u>, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." <u>Id.</u> at 1275 (emphasis added).

Because the court finds that <u>Sakezzie</u> and <u>Jim</u> were class action suits but that <u>Bigman</u> was not, the court divides its analysis into two parts, addressing two different legal theories presented by the State of Utah in support of its claim preclusion defense.

**The class actions suits <u>Sakezzie</u> and <u>Jim</u> do not have any preclusive effect on the <u>Pelt</u> Plaintiffs' claims because the nonparties were not adequately represented in the earlier cases.**

Privity exists if the party to the class action suit adequately represented the nonparty. <u>See, e.g.</u>, <u>Hansberry v. Lee</u>, 311 U.S. 32, 42-43 (1940) ("members of a class not present as parties to the litigation may be bound by the judgment where they are <u>in fact</u> adequately represented by parties who are present") (emphasis added); <u>Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation</u>, 975 F.2d 683, 688 (10th Cir. 1992) ("where the association does adequately

---

[8]There is no question that the named plaintiffs in the earlier suits were not the same as the named plaintiffs in the current suit. Accordingly, in order to establish the affirmative defense of res judicata, the Defendant must establish that the parties were in privity.

represent the interests of all members [in the earlier litigation], a court will find privity");

Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 193 F.3d 415, 423 (6th Cir. 1999)

(holding that privity element of res judicata doctrine is established when non-party to earlier suit

was adequately represented by party); Brown v. Ticor Title Ins. Co., 982 F.2d 386, 390 (9th Cir.

1992) ("if the plaintiff [in the present suit] was not adequately represented in the prior action or

there was a denial of due process, then the prior decision has no preclusive effect," citing

Hansberry v. Lee, 311 U.S. 32 (1940)).

 To determine whether a non-party was adequately represented in an earlier class action

suit, the Tenth Circuit has found that "[t]he question of adequate representation can best be

resolved by determining whether the interests of those who would attack the judgment were

vigorously pursued and protected in the class action by qualified counsel."  Garcia v. Board of

Educ., Sch. Dist. No. 1, Denver, Colo., 573 F.2d 676, 680 (10th Cir. 1978).  The parties disagree

about how detailed the court's inquiry must be.

 The Plaintiffs state that a "finding of inadequate representation may stem from the actions

of the class representatives, class counsel, the court, and even counsel opposing the class" and

that the court "may not shy away from 'Monday morning quarterbacking.'"  (Pls.' Mem. Supp. at

47.)  To support their motion, the Plaintiffs present a host of historical details about the nature of

and interactions between the parties, counsel, and the judges in the cases, as well as attorney

qualifications and each suit's outcome.  Defendant, on the other hand, asserts that the details

presented by Plaintiffs are for the most part not relevant and that "in evaluating the conduct of

counsel in the prior cases, courts should focus on the incentive to litigate created by the close

alignment of the interests at issue, rather than second guessing actual trial strategy."  (Def.'s

18

Opp'n Mem. at 38.)  The Defendant quotes comment f of § 42 of the Restatement 2nd of

Judgments: "'Tactical mistakes or negligence on the part of the representative are not as such

sufficient to render the judgment vulnerable.'" (<u>Id.</u> at 39.))  According to the Defendant, "[t]he

legal standard of adequacy of representation does not call for the Court to re-litigate the prior

cases.  It is only when the representative's management of the litigation is so grossly deficient as

to be apparent to the opposing party that the prior litigation will create no justifiable reliance for

future preclusion."  (<u>Id.</u> at 40 (citing Restatement 2nd of Judgments, Ch. 4, § 42, comment f).)

The court finds the Fifth Circuit's description of the scope of the adequacy inquiry

instructive:

> To answer the question whether the class representative adequately represented
> the class so that the judgment in the class suit will bind the absent members of the
> class requires a two-pronged inquiry: (1) Did the trial court in the first suit
> correctly determine, initially, that the representative would adequately represent
> the class? and (2) Does it appear, <u>after termination of the suit</u>, that the class
> representative adequately protected the interest of the class? . . . [T]he second
> [question] involves <u>a review of the class representative's conduct of the entire
> suit</u>—an inquiry which is not required to be made by the trial court but which is
> appropriate in a collateral attack on the judgment . . . .

<u>Gonzales v. Cassidy</u>, 474 F.2d 67, 72 (5th Cir. 1973) (emphasis added).  In <u>Gonzales</u>, the Fifth

Circuit held that the "primary criterion" for determining whether there was adequate

representation is "whether the representative, through qualified counsel, <u>vigorously and

tenaciously</u> protected the interests of the class.  A court must view the representative's <u>conduct of

the entire litigation</u> with this criterion as its guidepost."  <u>Id.</u> at 75 (emphasis added).  The

<u>Gonzales</u> court held that although the counsel's representation of the plaintiffs was "more than

adequate up to the time the three-judge court entered its final order on remand," the

representative's failure to appeal the decision rendered the representation inadequate.  <u>Id.</u> at 75-

19

76.  Compare Wal-Mart Stores, Inc. v. VISA U.S.A.  Inc., 396 F.3d 96, 106-07 (2d Cir. 2005) ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").  But see id. at 110 ("Adequate representation is not solely an assessment of effort.  Rather, an examination of the interests of the settling plaintiffs and of the Settlement's effect on those who would be bound by it [is also part of the analysis].") (emphasis added).  See also Wright, Miller & Cooper, Federal Practice and Procedure 2d § 4455 ("Shared interests do not alone ensure adequate representation.").

The scope of the inquiry seems to lie somewhere between what Plaintiffs and Defendants advocate in this case.  The court finds some of the details provided by the parties (e.g., the language and cultural barriers between the clients and their attorneys, the attorneys' efforts to collect attorneys' fees, and the attorneys' reputations) to be irrelevant to the analysis.  But the court must, to some extent, look back in hindsight to determine whether there was actual adequate representation.

Sakezzie

Based on the record, the court finds that the Plaintiffs were not adequately represented by the Sakezzie plaintiffs.  Although it is true that the parties' interests in the Fund were essentially the same, the court simply cannot find adequate representation in light of two factors.  First, the Sakezzie plaintiffs did not object to the Sakezzie court's finding that the accounting claim was moot based on a summary contained in an answer to an interrogatory.  Second, and more importantly, the case was dismissed by the court for failure to prosecute after an order to show cause had been issued.  The Sakezzie plaintiffs took no action even though it appears that the

20

plaintiffs believed that the defendant had not complied with the court's orders.  For example, the Sakezzie plaintiffs contended that the defendant had not complied with the court's order to provide monthly reports of receipts and expenditures to plaintiffs.  See Sakezzie II, 215 F. Supp. at 19 ("It is clear to the court that the defendants have not discharged their duty" to furnish certain information to the plaintiffs in compliance with the defendant's trust duties).  The Sakezzie plaintiffs' ultimate failure to follow through on an issue that they emphasized in their original complaint and two subsequent petitions is significant.  For these reasons, the court holds that the Plaintiffs in this case are not bound by the judgment in Sakezzie.

Jim

The court finds that the Plaintiffs were not adequately represented by the Jim plaintiffs.

Judge Ritter certified the class under Fed. R. Civ. P. 23(b)(2), which does not have an opt-out provision.  Fed. R. Civ. P. 23(b)(2), 23(c); In re: Four Seasons Sec. Laws Litig., 502 F.2d 834, 842 n.9 (10th Cir. 1974); Marcus v. Kansas Dep't of Revenue, 206 F.R.D. 509, 513 n.2 (D. Kan. 2002).  He also did not require notice to members of the class, stating that "the case has sufficient notoriety that no further notice to members of the class is necessary . . . at the present stage of the proceeding."  (Dec. 30, 1970 Order at 1-2, attached as Ex. 11 to Docket No. 870.)  The record does not support a finding that the case's "notoriety" generated the kind of notice necessary to protect the rights of absent class members.

Later, after plaintiffs asserted that an accounting had yet to be completed, Judge Ritter emphasized the importance of the accounting (which he noted had not been accomplished as late as May 25, 1976).  He said,

I think we should pursue the accounting matter of course.  I think that is the most

21

important part of the lawsuit, really.  The legal points are settled now.  Let's have
an accounting of what the state's been doing with the Indians' money.  That's the
short question that we need to go into and let's pursue it.

(Transcript of May 25, 1976 Hearing at 17, attached as Ex. 19 to Docket No. 870 (emphasis

added).)  Still, the plaintiffs took no further action.  As noted above, Judge Jenkins, in 1978,

issued an order dismissing the case (with prejudice) for failure to prosecute (after issuing an

order to show cause).

These factors do not depict a situation in which the absent class members' interests and

due process rights were vigorously pursued and protected by the class representatives.

Accordingly, the court finds that no privity existed between the <u>Pelt</u> plaintiffs and the <u>Sakezzie</u>

plaintiffs, and so the doctrine of res judicata does not bar the Plaintiffs' claims.

**No privity exists between the plaintiffs in <u>Bigman</u> and the plaintiffs in <u>Pelt</u>.**

Although <u>Bigman</u> was not a class action, the Defendant raises the theory of virtual

representation to support its position that <u>Bigman</u> has preclusive effect against beneficiaries of

the Fund.  Some courts, particularly in the Fifth Circuit, have treated certain informal

relationships "as synonymous with adequate representation for res judicata purposes."  <u>Meza v.</u>

<u>General Battery Corp.</u>, 908 F.2d 1262, 1267 (5th Cir. 1990).  "In certain limited circumstances,

this court has held that 'a person may be bound by a judgment even though not a party if one of

the parties to the suit is so closely aligned with his interests as to be his virtual representative."

<u>Id.</u> at 1272.

"The broadest form of this theory would preclude relitigation of any issue that had once

been adequately tried by a person sharing a substantial identity of interests with a nonparty."

Wright, Miller & Cooper, Federal Practice and Procedure 2d § 4457.  But the Fifth Circuit in

Meza warned that the question of virtual representation should be "kept within 'strict confines.'" 908 F.2d at 1272.  "Among the 'strict confines' is a requirement that there be 'an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues.'" Id. (emphasis added).  See also Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 193 F.3d 415, 424 (6th Cir. 1999) (holding that virtual representation required a legal relationship in which the party in the first suit is somehow accountable to the non-party); Waddell & Reed Financial, Inc. v. Torchmark Corp., 223 F.R.D. 566, 616-17 (D. Kan. 2004) (articulating same rule under Alabama law and citing cases in various federal circuits requiring accountability before a finding of virtual representation).  The Tenth Circuit has not issued an opinion addressing this relatively new theory.

The courts focus on accountability for good reason.  Fundamental rights such as due process, court access, and the right to a jury trial are threatened when a volunteer brings a lawsuit that conceivably affects the rights of nonparties.  Absent some sort of legal authorization, or measure of accountability for a job poorly done, the original party is but an interloper to the succeeding parties, leaving them with little or no recourse should the original party inadequately represent broader interests.

There is no evidence in the record whatsoever of any legal relationship or other form of accountability existing between the Bigman plaintiffs and the Pelt plaintiffs.  The fact that the plaintiffs in both cases had the same status (that is, beneficiaries of the same fund) is not enough to bind the Pelt plaintiffs to the judgment in Bigman.  This is particularly so because Bigman was not a class action and there is no evidence that the Bigman plaintiffs and their counsel were working for anyone's behalf other than theirs.  Given due process concerns (the basis of which is

23

well laid out in <u>Richards v. Jefferson County, Alabama</u>, 517 U.S. 793 (1996)), the court finds

that the <u>Pelt</u> plaintiffs are not barred by the judgment in <u>Bigman</u>.

**<u>Plaintiffs' request for ruling regarding the adequacy of earlier accountings</u>**

Given the fact that the court does not bar the Plaintiffs' claims in this suit on the basis of

res judicata, the Plaintiffs are working with a clean slate.  That is, the court need not determine

whether an accounting was rendered in each of the earlier suits, and, if so, whether each

accounting was adequate.

Rather, the court will proceed as was set forth in its June 19, 2001 Order (Docket No.

778) (setting forth standard and burdens relating to Utah's accounting duty and requesting

briefing of certain issues).  The court notes that one of the accounting issues identified in the

October 2, 2003 Joint Stipulated Case Management Plan (Docket No. 939) (whether the State of

Utah is obligated to account for funds spent by the Utah Navajo Development Council (UNDC))

is set for hearing on April 27, 2006.

**<u>ORDER</u>**

For the foregoing reasons, the court ORDERS as follows:

1.      Plaintiffs' Summary Judgment Motion re: Adequacy of Representation and

Sufficiency of Prior Accountings is GRANTED IN PART AND DENIED IN PART as follows:

a.      Plaintiffs' Summary Judgment Motion re: Adequacy of Representation is

GRANTED.  Plaintiffs are not precluded by the judgments in <u>Sakezzie</u>, <u>Jim</u>, or <u>Bigman</u>.

b.      Plaintiffs' Summary Judgment Motion re: Sufficiency of Prior

Accountings is DENIED AS MOOT.

24

2.      Defendant's Objection and Motion to Exclude or Limit Plaintiffs' Purported

Expert Testimony (Docket No. 982) is DENIED AS MOOT.

3.      Plaintiffs' Motion to Strike Declarations (Blake & Larson) (Docket No. 991) is

DENIED AS MOOT.

4.      Plaintiffs' Objection and Motion to Limit Testimony of Harold Christensen

(Docket No. 995) is DENIED AS MOOT.

DATED this 11th day of January, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge