IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JAKE C. PELT, ET AL., FOR THEMSELVES AND FOR AND ON BEHALF OF A CLASS OF PERSONS consisting of all Navajo Indians residing in San Juan County, Utah, including a sub-class of persons consisting of all other Indians the Secretary of Interior saw fit to settle on lands described in the 1933 Act [47 Stat. 1418] prior to May 17, 1968,<br>Plaintiffs,<br>vs.<br>STATE OF UTAH,<br>Defendant. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:92-CV-639-TC |

This case comes before the court for consideration of two distinct matters.

First, Plaintiffs (beneficiaries of the Navajo Trust Fund) have filed a Request for Clarification of Accounting Burdens defined by the court in earlier orders. The court partly grants the Plaintiffs' request by providing the limited clarification below.

Second, the parties filed cross motions for partial summary judgment regarding the legal issue of whether Defendant State of Utah may seek off-set of certain expenditures in an amended answer and counterclaim. Because the State has not indicated with certainty what, if any, gratuitous expense off-sets it will seek, and because the State has not actually filed a motion for leave to amend its answer and re-file old and new counterclaims, the court finds that any ruling

on the off-set issue would improperly provide an advisory opinion. Accordingly, as explained in more detail below, the cross motions for summary judgment are dismissed without prejudice.

## A. Off-Set

### 1. Procedural History

On April 29, 1997, Utah filed an Answer and Counterclaim. That pleading raised twenty-three affirmative defenses (none listed off-set as a bar to Plaintiffs' recovery)[1] and a counterclaim stating that Utah was entitled to recover attorneys' fees and expenses related to administering the Navajo Trust Fund and relating to the accounting. (See Answer & Counterclaim at 15-16.)

On May 30, 1997, Plaintiffs filed a Motion to Dismiss Counterclaim (Dkt # 314), contending first that the common law of trusts requires the trustee to bear litigation costs in its defense against allegations of misconduct, and second, that the individual plaintiffs may not be personally liable for the State's demand of costs and expenses.[2] (Pls.' Mem. Supp. Mot. Dismiss Counterclaim (Dkt # 316) at 3-8.)

That motion was not briefed further or resolved by court order. Instead, in October 1997, the parties filed a Stipulation for Dismissal of Utah's Counterclaim Without Prejudice, which reads in relevant part:

> By agreeing and stipulating to the dismissal of Utah's Counterclaim, without prejudice, so that it can be refiled in the future, plaintiffs and/or Utah are not waiving (and they specifically reserve the right to raise) any and all claims, defenses or rights which they may have in connection with this action and/or any Counterclaim Utah may file in the future.

---

[1]Utah claims otherwise, but based on a review of the affirmative defenses, the court disagrees.

[2]The Plaintiffs also contended that the State failed to join the United States as an indispensable party.

(Stipulation for Dismissal of Utah's Counterclaim, Without Prejudice (Dkt # 346) at 2 (emphasis added).)

In 2003, the State alluded to its desire to renew its counterclaim and add a request for off-set for "amounts Utah expended to benefit the beneficiaries separate and apart from any duty under the trust and from sources other than the Trust Fund," also called "gratuitous expenditures." (Case Mgmt Plan at 5-6; see also Utah's 1993 Proposed Case Management Plan (Dkt # 934), Attachment A, at 6.) Utah claims that, as Trustee, it is entitled to such an off-set if discovery and the accounting show that such expenditures exist.

Following the State's mention of off-set, the parties, in their Joint Stipulated Case Management Plan, identified the following issues for resolution:

> Utah asserts that it may be entitled to an off-set against any judgment for damages/equitable restitution that may be awarded to plaintiffs for amounts Utah expended to benefit the beneficiaries separate and apart from any duty under the trust and from sources other than the Trust Fund. Plaintiffs' position is that Utah is not entitled to assert this affirmative defense not plead in Utah's Answer. In addition, [P]laintiffs maintain that such expenditures, if made, are irrelevant and Utah is not entitled to any off-set.
>
> The parties agree that the issues of whether Utah is entitled to assert this defense and whether Utah is entitled to an off-set for gratuitous expenditures are issues of law that should be resolved by cross-motions for summary judgment. If Utah is allowed to seek an off-set for gratuitous expenditures, the amount of that off-set, if any, should be determined by summary judgment and/or at the final trial . . . .

(Oct. 2, 2003 Joint Stipulated Case Management Plan (Dkt # 939) at 5-6.)

Based on the parties' case management plan and a recent motion from Plaintiffs (see Dkt # 1123), the court improvidently ordered briefing (based on a misunderstanding that old counterclaims still existed and that the State had concretely proposed new counterclaims or affirmative defenses) on the legal aspects of the off-set issue. Specifically, the court stated that:

> The first question is whether Utah, having not pleaded off-set in its Answer,[[3]] is entitled to raise off-set at all. The second question is whether off-set is an affirmative defense that is available, as a matter of law, to a trustee in a case such as this. If the court finds that the defense of off-set is available, then the factual question of whether, and to what extent, Utah's liability, if any, is off-set by other expenditures is a matter for the damages phase of the litigation.

(Feb. 11, 2008 Order (Dkt # 1127) at 2.)

At the court's urging, the parties sought relief in their cross motions relating to the tentative claims. Plaintiffs moved for summary judgment that Utah has waived any affirmative defense based upon off-sets and, alternatively, for judgment on the pleadings that Utah has failed to state either a claim or a defense based upon off-sets. (Pls.' Mot. Summ. J. or J. on Pldgs re: Offsets (Dkt # 1144).) The State moved for partial summary judgment "in its favor on the issues of whether offsets are available to a trustee in a case such as this and whether Utah is entitled to claim offsets." (Utah's Cross-Mot. Partial Summ. J. re: Offsets (Dkt # 1146).)

But, to date, no request for leave to re-file old, or add new, counterclaims has been submitted by the State of Utah. Accordingly, there is nothing before the court that defines the contours of Utah's tentative claims, much less any official claim for expenditures, gratuitous or otherwise, against the Trust. During the hearing on the cross-motions, the State acknowledged that it did not know what, if any, of these types of off-set it would raise.[4]

---

[3]Utah takes issue with the court's statement that Utah did not plead off-set in its Answer. But it does not dispute the fact that its Answer and Counterclaim did not plead the type of off-set identified by the parties in their case management plan (that is, "off-set against any judgment for damages/equitable restitution that may be awarded to plaintiffs for amounts Utah expended to benefit the beneficiaries separate and apart from any duty under the trust and from sources other than the Trust Fund").

[4]Indeed, Plaintiffs noted in a footnote that their motion "does not address the substance of Utah's proposed off-set affirmative defense because, at this point, it remains unclear just how and with what Utah seeks to off-set its potential trustee liability." (Pls.' Mot. Summ. J. or J. on

**2.     Analysis**

The court, upon further analysis, has determined that the legal aspects of the off-set issue are inextricably intertwined with factual issues that may arise after completion of the accounting, and so it should not be decided at this point. Moreover, until the State actually seeks those expenses from the Trust through a pleading, the issues of whether off-set is an affirmative defense that was waived and whether Utah is entitled to off-set damages with certain expenditures are not ripe.

Based on the procedural status of this case, the court defers ruling on the questions, which are too abstract at this point. In short, the court declines to issue what it believes would be an advisory opinion. But the parties' positions are preserved in their cross motions and may be renewed if the court faces the issue after the accounting is complete and liability and damages become the issues of the day.

**B.     Plaintiffs' Request for Clarification of Accounting Burdens**

**1.     Background**

The court has already identified the three-step accounting procedure and the associated burdens of production and proof. First, the State must produce an accounting according to the standards set forth in Minnesota Chippewa Tribe v. United States, 14 Cl. Ct. 116 (1987), producing the information in a form that provides "sufficient information for the beneficiary to readily ascertain whether the trust has been faithfully carried out." (See June 19, 2001 Order (Dkt # 778) [hereinafter "2001 Order"] at 3 (quoting Blackfeet & Gros Ventre Tribes of Indians

---

Pleadings re: Offsets at 1 n.1.)

v. United States, 32 Ind. Cl. Comm. 65, 87 (1973)).) When the accounting is complete, it will carry with it a presumption of correctness[5] that shifts the burden to Plaintiffs to make exceptions.[6]

> Then the Plaintiffs may present exceptions to any transaction they choose to challenge.
>
> Plaintiffs' exceptions will fall into two broad categories: (1) expenditures for which Utah has violated its duty to account (e.g., no supporting documentation, or supporting documentation is not sufficient to show the purpose of the expenditure, etc.); and (2) expenditures for which Utah has violated its fiduciary duty (e.g., documentation suggests that expenditure did not benefit members of the beneficiary class, etc.).

(2001 Order at 5 (emphasis added).) The first category of exceptions is a narrow one. It focuses only on the State's duty to account. If documentation simply does not exist (e.g., $10,000 was received, but is no longer in the Trust Fund and its absence is not accounted for in any way) or if there is a material gap in the information (e.g., the documentation does not show why Joe Smith received a $500 check), then a Category One exception would be appropriate. But most exceptions should fall into Category Two, which focuses on the State's fiduciary duty. These

---

[5]"Presumption of correctness" does not mean a presumption that the expenditures were made in furtherance of the Trust purposes. Rather, it means that the State is presumed to put together accurate financial information and that the accounting is to be trusted.

[6]When the Plaintiffs filed their "Request for Clarification," they attached an "Addendum." In the Addendum, Plaintiffs contend that three sets of documents in the record (the 1977 Nelson Report, the 1991 Legislature Audit, and Utah State Auditor's annual reports for 2002-2006) "establish the critical need for linking [by the State] each expenditure to the actual Trust purposes of health, education and general welfare of the Trust beneficiaries." (Pls.' Addendum (Dkt # 1152) at 9.) They further contend that the State is not entitled to a presumption that a documented purchase furthered Trust purposes. According to the Plaintiffs, "[a]s the [findings in the 1991 Audit and 2002-2006 reports evidence], the problems with self-dealing, conflicts of interest, inadequate oversight, incomplete or misleading accounting, are ongoing and chronic." (Id.) Plaintiffs essentially argue that the court should reconsider its 2001 and 2007 Orders regarding accounting burdens and presumptions. The court will not consider the Addendum because it is procedurally improper (that is, it was not in the form of a motion).

exceptions should focus on any expenditure that the Plaintiffs feel is improper on its face (even knowing the purpose of the expenditure) or was not spent appropriately in light of the Trust's purposes (perhaps with evidence that the money was not actually used for the proffered purpose). At that point, the court will determine whether Plaintiffs have met their burden of going forward.

For exceptions that are well-taken by the court (i.e., where Plaintiffs have met their burden of going forward), the burden shifts back to the State to present a rebuttal to each of the exceptions. (Aug. 23, 2007 Order & Mem. Decision [hereinafter "2007 Order"] (Dkt # 1073) at 16.) Although the State ultimately bears the burden of persuasion (i.e., the burden of proving the allowability of a disbursement), that burden "does not mean that the State must point out alleged improprieties." (Id. at 17.) The State's burden of proof is preponderance of the evidence (i.e., more likely than not), and the State may rely on circumstantial evidence to support its position. (2001 Order at 6; 2007 Order at 17, 23.)

**2. Reason for Clarification Request**

On January 31, 2008, during a status conference, the State of Utah's expert accounting witness, certified public accountant Kelly Johnson, demonstrated the State's chosen method for documenting Navajo Trust Fund expenditures. He used, by way of example, a draft set of documentation of September 1986 expenditures. Providing a narrative, Mr. Johnson guided the court and Plaintiffs' counsel through the process of tracing a particular expenditure – specifically, an expenditure of $12.74, documented by an August 1, 1986 receipt for purchase of paint thinner from Parley Redd Mercantile in Blanding, Utah, for the UNDC Adult Education Program. (See Jan. 31, 2008 Tr. of Status Conference (Dkt # 1133) at 4-14.)

At the end of the demonstration, the court informally indicated that it seemed as if, for

that particular expenditure, the State had met its initial burden and that it was up to the Plaintiffs to show that the expenditure was not spent in conformance with the terms of the Trust. (See id. at 15.) Based on the court's oral response to Mr. Johnson's demonstration at the status conference, Plaintiffs filed their Request for Clarification of Accounting Burdens (and the accompanying Addendum).

In their Request, the Plaintiffs ask, "does the court stand by its informal pronouncement [during the status conference] that a purchase of paint thinner from a UNDC budget creates a rebuttable presumption that the purchase furthered Trust purposes even without a showing that the expenditure actually furthered Trust purposes?" (Pls.' Request for Clarification (Dkt # 1152) at 4.) In short, the answer is "yes."

What Plaintiffs truly want to know is whether they would meet their burden, when the time comes for making exceptions, if they, for example, challenged the paint thinner purchase under Exception Category One on the basis that the supporting documentation is not sufficient to show the purpose (the "why") of the expenditure. They say that, "[i]f the court stands by the initial observation [as it does], the plaintiffs hereby seek assurance that an exception based upon Utah's failure to show how the thinner actually was used would be sufficient to shift the ultimate burden of proof back to Utah." (Id. (emphasis added).) The short answer is that it would not be sufficient to shift the burden back to the State because the State is not required to show "how the thinner actually was used."

Plaintiffs raise their question in light of language in the court's 2001 Order and 2007 Order, which (as summarized above) set forth accounting burdens and the proper types of exceptions Plaintiffs may make in response to the accounting. The confusion appears to arise

with the court's use of the terms "purpose" and "proper" in its 2007 Order. In that Order, the court stated that Utah was "obliged to demonstrate the 'why' (or purpose) of an expenditure" as part of its accounting. (2007 Order at 7.) The court also quoted Blackfeet & Gros Ventre Tribes of Indians v. United States, 32 Ind. Cl. Comm. 65, 85 (1973), which stated, "The burden is on the defendant to make a proper accounting. Thus for a particular item to be exceptionable, the test is not whether the report shows it to be improper; it is enough if the report fails affirmatively to show that it was proper." (Id. at 11.)

Plaintiffs interpret the phrase "the 'why' (or purpose)" and the term "proper" to mean that the State, in its accounting, must show that the expenditure actually furthered the purposes of the Trust. That is an incorrect interpretation. By "purpose" the court means that the documentation must show not only that, for example, $500 was paid to Joe Smith, but that it was paid to Joe Smith as part of payroll because Joe Smith was an employee of the UNDC's Education Division at the time the check was issued and cashed. On its face, such an expenditure would be "proper" given circumstantial evidence and common sense.

It would then be the Plaintiffs' job to challenge, for example, the propriety of the UNDC's Education Division or the employment of Joe Smith, if they believe the money was not spent appropriately. The allegation that a paycheck to Joe Smith did not further the purposes of the Trust is a separate issue for the Plaintiffs to prove, not with a blanket exception under Category One, but with argument and evidence under a Category Two exception. As the State succinctly pointed out, "[o]ne problem with the 'clarification' sought by the plaintiffs is that it would effectively negate their burden of making exceptions to Utah's accounting, and would force Utah to anticipate what those exceptions might be and to obtain evidence, as part of the

UNDC Accounting, that would negate every conceivable exception." (Utah's Opp'n to Request for Clarification (Dkt # 1155) at 7.)

Given the preponderance of evidence standard, evidence showing, for example, that the paint thinner was used by Jane Doe to clean the brushes that were used to paint a particular adult education classroom in August 1986, or that vocational trade students in the adult education program actually used the paint thinner in their classroom projects, is not required. The State has shown, by a preponderance of evidence (including circumstantial evidence and reasonable inferences drawn from that evidence), that the paint thinner was used as part of the Adult Education program of UNDC. Enough information was there to establish that inference, and the State's burden does not include the requirement that the State point out alleged improprieties. If the Plaintiffs are suspicious, then they have the tools to determine (to "readily ascertain") whether the State's supporting documentation tells the correct story.

**3. Paint Thinner Example**

The Plaintiffs object that the court has placed an unfair and improper impossible burden on them:

> It would impermissibly burden the plaintiffs with having to examine records, identify witnesses and conduct discovery to ascertain the use to which an expenditure was put for the purpose of possible making a category-two exception. Now, completely owing to Utah's prior violations of fiduciary obligation, Utah would burden the *plaintiffs* with proving where the paint thinner was used, and whether the scholarship recipient actually attended school as represented *and* was an actual Trust beneficiary. These are precisely what Utah should have been tracking – or forcing UNDC to track – at the time the expenditures were made.

(Pls.' Reply (Dkt # 1162) at 4 (emphasis in original).)

The Plaintiffs use the paint thinner purchase as an example. They claim that the records

provided by the State do not provide "sufficient information for the beneficiary to readily ascertain whether the trust has been faithfully carried out." Blackfeet & Gros Ventre Tribes of Indians v. United States, 32 Ind. Cl. Comm. 65, 87 (1973). They apparently believe that "readily ascertainable" means a formal report that:

> inform[s] an actual Trust beneficiary whether each expenditure of her money actually furthered the beneficiaries' health, education or general welfare. . . . Utah might produce evidence that the UNDC Board or the coordinator of UNDC's housing program (within the authority granted by the Board) authorized construction of a building; that UNDC purchased paint thinner; and, actual evidence that the thinner was used on this building. Anything less simply fails to "enable the Plaintiffs to readily ascertain that the expenditure was made in furtherance of the trust."

(Pls.' Reply at 3-4 (emphasis added).) But this presupposes that the Plaintiffs do not need to dig through boxes of documents or gather their own evidence. Underlying Plaintiffs' insistence that the State provide "actual evidence" that thinner was purchased, that it was purchased for a particular use, and that it was actually used by some individual on an actual identifiable project for the adult education program, is the Plaintiffs' concern that fraud has tainted all of the State's actions. But the standard is preponderance of the evidence, not a standard that disproves fraud.

The court, to satisfy its own curiosity and to test Plaintiffs' theory that a Category One exception to the paint thinner example would be appropriate, experimented by looking at the papers the State provided on January 31, 2008, and pulling documentation from the State's original accounting papers.[7] What the court found (as spelled out in more detail below) is that

[7] By "original accounting papers," the court means the two sets of accounting documents provided by the State to the Plaintiffs and the court a number of years ago. First, on December 20, 1999, Utah filed its "Initial Accounting" with the court. (See Dkt # 612). Second, on August 29, 2000, Utah filed its "Supplemental Accounting" with the court. (See Dkt #s 677, 680-95).

supplemental documentation confirmed that a Category One exception would not be sufficient to shift the burden. According to papers already on file with the court, and based on reasonable inferences drawn from circumstantial evidence, it appears that the paint thinner more likely than not was purchased and used for the UNDC's Adult Education Program in the vocational trades program or to build or remodel a building for the program's offices and classrooms.[8]

a. Tracing the paint thinner

First, the court reviewed the history of the $12.74, as demonstrated by Mr. Johnson in his narrative and in the binder distributed during the status conference. (That binder contained draft papers for UNDC expenditures during September 1986 (FY1987) [hereinafter "Binder"].) The papers in the Binder show that the $12.74 was part of an original disbursement from Utah to the UNDC in the amount of $432,780.25 (called "First Quarter Draw FY/87 Operating Costs"). That first quarter draw was shown on a July 2, 1986 Warrant Request approved and issued by the State

[8]If the Plaintiffs had made a blanket exception to the paint thinner purchase, the documentation found by the court would negate the exception. In the 2007 Order, the court set forth rules to avoid unfair burden shifting:

> The court is concerned that burdens may be shifted de facto by a party's failure (inadvertently or otherwise) to satisfy its burden. Accordingly, the court imposes the following ground rules. If the Plaintiffs contend that no adequate accounting exists for a particular disbursement, and the State, during its rebuttal, demonstrates that the information regarding the expense was reasonably ascertainable from the initial accounting report, the disbursement will be deemed allowed, whether or not it was spent in accordance with the trust. That is, the Plaintiffs will lose the right to allege that the expenditure was not legitimate.

(2007 Order at 26.) A corresponding rule applies to the State: "If the State does not adequately account for a disbursement during the first stage of the accounting process, and the Plaintiffs make an exception based on that, the disbursement will be disallowed even if the State can later produce documentation from the record that sufficiently accounts for the disbursement." (Id. at 26-27.)

of Utah Department of Finance. (See Binder R001.) The Warrant Request and the letter from UNDC requesting the draw both contain a handwritten note that the draw was approved by the Utah Division of Indian Affairs (UDIA) Board on June 19, 1986. (Id. R001-R002.)

The Binder papers also documented that the quarterly draw of $432,780.25 was accurately calculated to be one-fourth of the UNDC's approved FY1987 Operating Budget. (See id., Budget Summary, R003.) Specifically, the Proposed UNDC Budget for Fiscal Year 1987 showed a request from UNDC of $1,831,888.00, of which $1,731,121.00[9] constituted the operating budget. $1,731,121.00 divided by four equals $432,780.25.

These amounts were approved by the UDIA Board, as demonstrated by the UDIA Board Minutes from the June 19, 1986 meeting. The minutes state that "[t]he FY/87 budgets were proposed to the UDIA Board at the Board meeting on May 15, 1986. The UDIA Board members reviewed the budget during the month and approved the following budgets as listed below: . . . Utah Navajo Development Council's FY/87 budget will be a total of $1,831,888[.]" (See Board Minutes, Volume BM-2, at C0061176-1177, C0061171 (submitted on August 29, 2000, by State as part of its First Supplemental Accounting) (Dkt # 693).) And the minutes from the May 15, 1986 meeting show that the UNDC presented the same budget total, with a breakdown of the numbers, to the UDIA Board. (See id. at C0061185.) In other words, the State has documented official approval of the FY1987 UNDC Budget and the first quarterly draw from the appropriated budget. The remaining documentation, going down various levels to the August 1, 1986 receipt for paint thinner, is in the Binder.

---

[9] $1,731,121.00 comes from adding the two columns of operating budget numbers together ($1,665,458.00 and $65,663.00). (See Binder R003.)

The court then looked for documentation to show, by a preponderance of the evidence, that the paint thinner was used by the UNDC for the benefit of the Trust beneficiaries. Because the paint thinner expense was coded under the Adult Education Division number, the court looked at UNDC educational reports and newsletters published around the time of the purchase.

In the UNDC Education Division's annual report for FY1986, the Adult Education Division (including its annual objectives, goals, accomplishments, and problems) was discussed extensively. (See UNDC Education Division Annual Report for FY1986 Circa November 1986, Ex. 34, State's First Supplemental Accounting, Prior Reports Vol. RP-2.) The report noted that the Adult Education Division provided vocational education in the building trades. (Id. at 4. See also, e.g., Summer/Fall 1986 Utah Navajo Quarterly Newsletter, Vol. RP-6 at JM100386 ("Vocational Education honors graduates").) The training provided on-the-job experience for students, including work to build a new learning center for the Education Division. (See UNDC Education FY1986 Report at 4, 8 (noting that during FY1986, the Navajo Building Trades class provided labor to build "the much needed new learning center building to replace the old one at Bluff" but that the class "was not able to stay on schedule for the completion of the Bluff Learning Center . . . [and] it was necessary for the Adult Education Coordinator to make other arrangements."); see also id. at 12 (listing completion of the "new Bluff Learning Center building" as FY1987 goal).)

In the UNDC's FY1987 Annual Report, the section discussing the Adult Education division noted that "[p]lans were reactivated to finish the Bluff learning center. The center is scheduled for completion in FY-88." (UNDC FY1987 Annual Report at 3 (C17209), Ex. 38, Prior Reports Volume RP-2.) But in UNDC's Spring 1986 Utah Navajo Quarterly newsletter, an

article notes that the "new Bluff learning center, currently under construction, has hit a funding snag that will delay completion. . . . According to [the UNDC adult education supervisor], the center is structurally complete, but he says ' . . . there is still a lot to do before we can start classes.' He says the center needs electricity, water, sewer and finish work. . . . Construction of the building started last fall. Materials costs were paid for by UNDC . . . ." (Vol. RP-6 at JM100370 (emphasis added). But then the Spring/Summer 1987 Utah Navajo Quarterly reported that construction on Bluff learning center was on hold for two years and that nothing happened in 1986 (when the paint thinner was purchased). (Id. at JM100404.) So it is not clear that the purchase was used for the new learning center. But it is reasonable to believe that the vocational training was ongoing and that paint thinner would be needed as a supply for the vocational training students.

Alternatively, the Summer/Fall Quarter 1986 Utah Navajo Quarterly, an article reported that the UNDC Education Division "recently moved their offices to new quarters . . . in Blanding. . . . The departments now housed in the new location include adult education, teacher training, vocational education, and the developmentally disabled program. Prior to the move, property workers were busy remodeling, carpeting and cleaning, to get the building ready for occupation." (Id. at JM100390.) Although this is apparently a different building than the Bluff learning center, it is another construction project for which paint thinner could reasonably be expected to be used during remodeling. The timing of the paint thinner purchase (August 1, 1986) coincides with the timing of the construction and remodeling project.

b. No further clarification needed

In summary, there was enough readily ascertainable material in the binders already

provided to the court[10] to counsel Plaintiffs that a Category One exception would not be appropriate in this particular instance. Beyond the example discussed in this order, the court believes it has already provided the necessary information to allow the parties to understand and meet their burdens. Accordingly, the court provides no further clarification and stands by its earlier orders, including the 2001 Order and 2007 Order.

**ORDER**

For the foregoing reasons, the Plaintiffs' Request for Clarification (Dkt # 1152) is granted in part and denied in part. The parties' cross-motions for summary judgment regarding the off-set issue (Dkt #s 1144 and 1146) are denied without prejudice.

DATED this 9th day of June, 2008.

BY THE COURT:

Tena Campbell

TENA CAMPBELL
Chief Judge

---

[10]The court expects that the documentation currently available does not constitute the complete set of documentation upon which the State will rely when it submits its final accounting.