IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JAKE C. PELT, ET AL., FOR THEMSELVES AND FOR AND ON BEHALF OF A CLASS OF PERSONS consisting of all Navajo Indians residing in San Juan County, Utah, including a sub-class of persons consisting of all other Indians the Secretary of Interior saw fit to settle on lands described in the 1933 Act [47 Stat. 1418] prior to May 17, 1968,<br><br>Plaintiffs,<br><br><br>vs.<br><br><br>STATE OF UTAH,<br><br>Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br><br><br><br>Case No. 2:92-CV-639-TC |

Beneficiaries of the Navajo Trust Fund ("NTF" or "Trust Fund") filed this class action against the NTF trustee, Defendant State of Utah, seeking relief for alleged mismanagement of Trust Fund monies. They seek an equitable accounting of Trust Fund income and expenditures and replenishment of Trust Fund resources lost through any proven breach of fiduciary duty.

This matter comes before the court on cross motions concerning the State of Utah's laches and statute of limitations defenses.[1] Utah, in a motion requesting reconsideration of the

---

[1]Specifically, the cross motions are Defendant State of Utah's Motion to Reconsider Memorandum Decision Addressing Laches & Statute of Limitations Defenses (Docket No. 1209), and Plaintiffs' Rule 12(c) & Rule 56 Motion to Dismiss Utah's Laches & Statute of Limitations Claims (Docket No. 1216).

court's 1999 Order dismissing the two defenses, contends that dismissal was incorrect and that the two defenses should be reinstated in its Answer.  Plaintiffs contend not only that the 1999 dismissal was correct but that even if the court reinstates the defenses, the merits of Utah's defenses should be decided now in Plaintiffs' favor because the defenses are not valid as a matter of law or fact.

Although the parties raise many issues, the court finds that only the following questions need be decided.  First, are the Plaintiffs seeking solely equitable remedies?  Second, is the State of Utah entitled as a matter of law to assert the affirmative defenses of laches and statute of limitations?  Third, if so, are the Plaintiffs entitled at this time to summary judgment disposing of the two affirmative defenses?

For reasons set forth below, the court vacates the 1999 Order because the State of Utah adequately pleaded the affirmative defenses of laches and statute of limitations in its Answer, which should not have been dismissed on a motion for judgment on the pleadings.  But, because both defenses fail as a matter of law and fact, Plaintiffs' Motion for Summary Judgment [2] is GRANTED and the State's laches and statute of limitations defenses are dismissed with prejudice on the merits.

## I. PROCEDURAL AND FACTUAL BACKGROUND

A.    **Establishment of the Navajo Trust Fund**

In 1933, Congress established the Navajo Trust Fund (NTF) through legislation which

---

[2]The Plaintiffs filed a motion seeking alternative rulings of judgment on the pleadings or summary judgment.  Because the court finds the summary judgment issues ripe for decision, the motion for judgment on the pleadings is moot and the court will not address issues raised in that context.

imposed certain trust responsibilities on the State of Utah.  The corpus of the NTF comes from 37½ % of net royalties derived from exploitation of oil and gas deposits under the Navajo Reservation's Aneth Extension (the ancestral home of Navajo Indians and other Native Americans).  According to the 1933 statute, the 37½ % net royalties were to be paid to the State of Utah, which was then required to spend those royalties for the health, education, and general welfare of the Indians residing in the Aneth Extension.  Congress later expanded the beneficiary class to include all Navajo Indians living in San Juan County, Utah.  See An Act to Permanently Set Aside Certain Lands In Utah As An Addition To The Navajo Reservation, And For Other Purposes, 47 Stat. 1418 (1933), amended by Pub. L. No. 90-306, 82 Stat. 121 (1968) (hereinafter "1933 Act"); see also Pelt v. Utah, 104 F.3d 1534, 1538-39 (10th Cir. 1996).   The 1933 Act, as amended, reads in relevant part as follows:

> Should oil or gas be produced in paying quantities within the lands hereby added to the Navajo Reservation, 37½ per centum of the net royalties accruing therefrom derived from tribal leases shall be paid to the State of Utah: *Provided*, That said 37½ per centum of said royalties shall be expended by the State of Utah for the health, education, and general welfare of the Navajo Indians residing in San Juan County.

47 Stat. 1418 (1933), as amended by 82 Stat. 121 (1968).

The corpus of the NTF was created in approximately 1959, when the oil and gas leases began generating royalty income.  Since then, the State has been administering the NTF.

**B.**  **Beneficiaries' Previous Lawsuits Seeking An Accounting from the State of Utah as Trustee of the NTF**

Since the NTF was established, the State of Utah (on its own or through its agency the Utah Board of Indian Affairs (previously known as the Utah State Indian Affairs Commission)) was a defendant in three previous lawsuits brought by different beneficiaries of the NTF:

3

Sakezzie v. Utah State Indian Affairs Commission et al. ("Sakezzie") (filed in 1961), Jim v. State of Utah et al. ("Jim") (filed in 1970), and Bigman v. Utah Navajo Development Council, Inc. et al. ("Bigman") (filed in 1977).

In the case here, the State of Utah raised a res judicata defense based on the earlier litigation.  But in 2006, the court ruled that the Plaintiffs' claims were not barred by the doctrine of res judicata (claim preclusion) because the Plaintiffs were not adequately represented in any of the three previous lawsuits (Sakezzie, Jim, and Bigman) filed by other beneficiaries against the State of Utah concerning the NTF.  (Am. Order & Mem. Decision (Docket No. 1043).)  The Tenth Circuit affirmed the decision in 2008.  Pelt v. Utah, 539 F.3d 1271 (10th Cir. 2008).

Given the res judicata ruling, the State of Utah must account for NTF income and expenditures for the years dating back to approximately fiscal year 1960 (ending June 30, 1960) when oil and gas royalty revenues were first deposited into the NTF up until 1992, when the Plaintiffs filed their Verified Complaint.

Now the State points to the three lawsuits as evidence that the Plaintiffs knew, or should have known, that they had a claim against the State of Utah but waited too long to file the case here, and so their claims are time-barred.  Because some of the facts surrounding those three cases (in which the plaintiffs sought an accounting from the State of Utah) are relevant to the issue of laches, the court will repeat them here.

## 1.    The 1961 Case of Sakezzie v. Utah State Indian Affairs Commission et al.

The Sakezzie complaint was filed in the District of Utah on April 2, 1961, on behalf of the named plaintiffs and "as representatives of and members of the class of persons who are Navajo Indians residing within the Aneth Extension of the Navajo Indian Reservation in San

4

Juan County, Utah."  (Sakezzie Compl. at 1 (in caption), attached as Ex. U to Docket No. 972.)[3]

In their complaint, the Sakezzie plaintiffs requested an accounting of all Trust Fund monies and

alleged that none of the expenditures had been for their use and benefit.  (See id. at p. 2 ¶¶ 5 & 7,

and p. 6 ¶ 2.)  The case was tried to the court without a jury on June 12, 1961.  The court gave an

oral opinion in which it stated that "[t]he matter of accounting has been rendered moot by pretrial

discovery" in which the defendants had answered some of plaintiffs' interrogatories with

abbreviated explanation of expenditures from the Trust Fund, none of which was supported by

backup documentation.  (See June 12, 1961 Oral Opinion of the Court at 18-19, attached as Ex. 3

to Docket No. 870;  Sakezzie Defs.' Answer to Pls.' Interrogatories, attached as Ex. BB to

Docket No. 972).)

On August 25, 1961, the Sakezzie court entered written Findings of Fact and Conclusions

of Law, in which it found that the Utah defendants "have not kept the plaintiffs and those

represented by them reasonably informed concerning the amounts received in said fund and as to

expenditures from said fund; but in the course of this proceeding have fully informed the

plaintiffs of such receipts and expenditures." Sakezzie v. Utah Indian Affairs Comm'n, 198 F.

Supp. 218, 222 (D. Utah 1961) ("Sakezzie I").  But the court emphasized that the State's proper

administration of the Trust Fund in the future should include an accounting that contains

"reasonably accurate, complete and current information concerning the receipts[,] expenditures

and projects of the defendants."  Id. at 225-26.  Plaintiffs did not appeal the court's findings of

_____

[3]The court refers to docket numbers because in some cases the citations refer to exhibits
submitted earlier in the case with other pleadings.  Accordingly, rather than giving the name of
the pleading in all cases, which may be confusing to the reader, the court will sometimes list only
the docket number to allow for easier accessibility to the record.

fact and conclusions of law.

A year later, on July 2, 1962, the Sakezzie plaintiffs filed a post-judgment petition for injunctive relief to enforce the court's 1961 judgment and decree,[4] specifically alleging that the State was refusing to provide information concerning receipts and disbursement of the Trust Fund.  The plaintiffs sought monthly reports of receipts and expenditures.  (See Sakezzie Pls.' July 2, 1962 Petition at 2-5, attached as Ex. 4 to Docket No. 870.)  The Sakezzie court issued a Memorandum of Decision on February 7, 1963, in which it found that "defendants . . . have demonstrated remarkable unconcern about keeping the beneficiaries of the fund informed of accretions to said fund, about disbursements and commitments therefrom and about plans with respect to future expenditures . . . ."  Sakezzie v. Utah Indian Affairs Comm'n, 215 F. Supp. 12, 18 (D. Utah 1963) ("Sakezzie II").  The court further stated that

> [i]t is clear to the court that the defendants have not discharged their duty [to submit monthly reports to the plaintiffs.] . . . [A]nd it is no answer to say that the information could be ferreted out from their records by the plaintiffs.  . . .  It does not seem unreasonable, indeed it seems essential, to recognize that a program for the affirmative disclosure of available information as to the plaintiffs is indispensable for the proper discharge of the defendants' trust . . . .

Id. at 18-19 (emphasis added).  The court ordered the defendants to provide monthly reports of receipts and expenditures to the plaintiffs.  Id. at 24. (See also Sakezzie Feb. 25, 1963 Supplemental J. & Decree, attached as Ex. 8 to Docket No. 870.)

On May 12, 1964, the Sakezzie plaintiffs filed another petition, again seeking relief from the defendants' alleged failure to comply with the court's two earlier orders.  (See May 12, 1964

---

[4]The judgment was not reported, but the court's subsequent decision on the petition summarizes the judgment's main provisions.  See Sakezzie v. Utah Indian Affairs Comm'n, 215 F. Supp. 12, 14 (D. Utah 1963) ("Sakezzie II").

Sakezzie Pls.' Petition, attached as Ex. V to Docket No. 972).)  The record does not show any

further activity in the Sakezzie case until a year later, when the court held a hearing on June 7,

1965, regarding its order to show cause why the 1964 petition should not be dismissed for failure

to prosecute.  The Sakezzie plaintiffs' attorney did not attend, and the court dismissed the

petition.  (See June 7, 1965 Minute Entry in Sakezzie, attached as Ex. W to Pls.' Mem. Supp.

Mot. For Summ. J.)  On June 9, 1965, two days after the hearing, the Sakezzie plaintiffs' attorney

filed a Motion for Reinstatement of Its Pending Petition.  The court denied the motion on June

21, 1965, but granted the Sakezzie plaintiffs leave to file another petition.  Despite permission to

do so, the plaintiffs did not file another petition.  (See Docket No. 984 at 7 (admitting facts set

forth in Docket No. 972 at ¶¶ 30-33).)  The June 9, 1965 dismissal for failure to prosecute

appears to be the end of the Sakezzie suit.

Five years later, in 1970, another Trust case was filed by different beneficiaries.

### 2.        The 1970 Case of Jim v. State of Utah et al.

Jim was filed as a class action on February 7, 1970.  The named plaintiffs were members

of a class consisting of approximately 1500 Navajo and other Indians residing on the Aneth

Extension of the Navajo Reservation.  (See Jim Compl. at pp. 1-2 ¶ 4, attached as Ex. B to

Docket No. 972.)  The Jim plaintiffs alleged, among other things, that Utah had breached its

fiduciary duty by spending trust funds on non-beneficiaries, and they requested an accounting of

monies received and spent from the royalties.  (Id. at p. 6 ¶ 13; Jim Am. Compl. at p. 6 ¶ 13 &

p. 7 ¶ 2, attached as Ex. 10 to Docket 870.)

The case was tried without a jury and the Jim court entered an Interlocutory Decree and

Order on February 7, 1972, ordering Utah to file the monthly reports that had previously been

ordered in Sakezzie.  (See Feb. 7, 1972 Interlocutory Decree & Order at 3 (attached as Ex. 12 to

Docket No. 870).)

After resolution of an appeal to the United States Supreme Court on a separate issue, the

case was remanded.  Following a January 9, 1974 hearing, the Jim court held that the accounting

ordered in the court's February 7, 1972 Interlocutory Decree & Order had not been done and that

the plaintiffs were entitled to an accounting.  (Feb. 7, 1974 Order at 2, attached as Ex. Y to

Docket No. 972.)  The Jim court ordered the State to file with the court "a complete,

comprehensive, proper, lawful accounting showing, for two periods, to-wit, up to May 17, 1968

and from May 17, 1968 to the present [February 1974]" consisting of various types of

information listed in the Order.   (Id.)

During a July 14, 1975 hearing, counsel for the Jim plaintiffs told the court that "[a]n

accounting and abstract was filed with the court, and the plaintiffs do not object to that."  (Tr. of

July 14, 1975 Hr'g at 2, attached as Ex. 18 to Docket No. 870.)  Nothing further regarding the

"accounting and abstract" was discussed at the hearing, so the transcript does not identify the

documents to which the Jim plaintiffs were referring.  But the record does contain an "Abstract

of Minutes and Financial Statements of Defendant Utah Board of Indian Affairs" filed by the

defendants on February 7, 1974, the same day the hearing was held.  (See Ex. 15 to Docket No.

870.)[5]  The pleading contained the following statement:

_____

[5]The court notes that on February 7, 1974, the Jim defendants filed what they referred to
as "Accounting of Defendant Utah Board of Indian Affairs With Regard To Receipts And
Expenditures From February 25, 1963 Through May 17, 1968" in response to an oral order the
court issued on June 9, 1973.  (See Ex. Q attached to Docket No. 972.)  But this "accounting"
was filed before the Jim court held on February 7, 1974, that no accounting had been done.  (See
Feb. 7, 1974 Order at 2.)

The parties have heretofore <u>stipulated</u> that, <u>pending final action</u> on defendants'
appeal from the Decree and Order entered herein on February 17, 1972, <u>an</u>
<u>abstract of minutes and financial statements</u> of the Utah Indian Affairs Board
since Feb. 25, 1963, <u>may be filed with the court in lieu of compliance with the</u>
<u>reporting requirements of paragraph 4 of said Decree and Order</u>, without,
however, prejudice to the Court's right to require further reporting or accounting
with respect to matters involved in the case.

(<u>Id.</u> at 1 (emphasis added).)

At a hearing almost one year later (May 25, 1976), the <u>Jim</u> court again ordered an

accounting after the parties indicated that one had yet to be completed.  (<u>See</u> Tr. of May 25, 1976

Hr'g at 13-14, 16-17, attached as Ex. 19 to Docket No. 870.)  At the very end of the hearing, the

court said,

I think we should pursue <u>the accounting matter</u> of course.  I think that is the <u>most</u>
<u>important part of the lawsuit</u>, really.  The legal points are settled now.  Let's have
an accounting of what the state's been doing with the Indians' money.  That's the
short question that we need to go into and let's pursue it.

(<u>Id.</u> at 17 (emphasis added).)

Despite the <u>Jim</u> court's edict, no further action was taken on the case until the court held a

hearing on December 29, 1978, on an order to show cause why the case should not be dismissed

for failure to prosecute.  After hearing arguments from counsel, and with no cause having been

shown why the action should not be dismissed, the court dismissed the case.  (<u>See</u> Dec. 29, 1978

Order of Dismissal, attached as Ex. 21 to Docket No. 870.)

While the <u>Jim</u> case was still pending, another case was filed by different beneficiaries

against the State.

### 3.    The 1977 Case of <u>Bigman v. Utah Navajo Development Council, Inc. et al.</u>

The <u>Bigman</u> case was filed on February 7, 1977, by Seth Bigman and Martha Collins.

The case was not filed as a class action but the complaint said it was "an action by Navajo Indians as beneficiaries of an oil royalty trust fund seeking to preserve and protect the fund from defalcations and misexpenditures." (Bigman Compl. at 1, attached as Ex. C to Docket No. 972.)

The Bigman plaintiffs alleged that the defendants had breached their fiduciary duty, and requested a full accounting and recovery of all money that had been wrongfully expended from the Trust Fund. (Bigman Compl. at p. 8 ¶¶ 26 & 29(a), p. 9 ¶ 3.)

On August 8, 1977, seven months after the case was filed, the parties settled. (See Stipulation of the Parties, attached as Ex. J to Docket No. 972.) The settlement provided for a review of questionable transactions, a review of the Utah Navajo Development Council's (UNDC) accounting and management practices, and a review of the medical clinics at Montezuma Creek, Mexican Hat, and Navajo Mountain. (Bigman Sep. 8, 1977 Stipulated J. & Decree, attached as Ex. K to Docket No. 972.) The Bigman case was not a class action suit, and no official notice was provided to non-party beneficiaries concerning the proposed settlement or the court's review and acceptance of the parties' agreement. (See Docket No. 972 at ¶ 151; Docket No. 984 at p. 24 ¶ 151.)

Based on the stipulated judgment and decree, the parties retained Dr. Roger Nelson to review the questioned transactions, the accounting and management practices of UNDC, and the operation and management of the medical clinics. Dr. Nelson filed his report with the court on December 12, 1977. (See Ex. 72 attached to Docket No. 870; 1977 Nelson Report (attached to Utah's 1st Supplemental Accounting, Vol. PA-1, Tab 14).)

The 1977 Nelson Report was titled "A Management and Investigative Review of the Utah Navajo Development Council." In its Introduction, it describes the report's scope:

10

> This study arose from a decree of the United States Court, Central Division, involving Civil Action No. C-77-0031 Seth Bigman and Martha Collins, Plaintiffs v. Utah Navajo Development Council, Inc., et. al., defendants. Paragraphs three, four and seven of the Court's decree require a review of certain transactions involving the Navajo Oil Royalty Trust Fund, a review of the accounting and management practices of the Defendant, Utah Navajo Development Council, Inc. and a review of the operation and management of Defendant's medical clinics. . . . There was also agreement of Plaintiffs and Defendants that the recommendations resulting from that investigation would be promptly and systematically implemented.

(1977 Nelson Report at A20937-A20938.)

Apparently the Nelson Report, although available for inspection by members of the public, was not publicly distributed. But the settlement of certain accounting issues did not end the Bigman litigation.

By stipulation of the parties, two remaining issues were presented to the court without trial. On September 25, 1978, the court issued a Memorandum Opinion addressing the issues. (See Sep. 25, 1978 Mem. Op. in Bigman v. UNDC, Case No. 77-0031.) The court found that, on the record before it, it was "unable to ascertain whether the State of Utah has exceeded its authority or abused its discretion in directing the use of the funds for [certain specified purposes]. . . . The court declines to determine the lawfulness of specific expenditures of the funds due to the absence of any evidentiary basis for doing so." (Id. at 7.) The case remained open on the docket.

On December 5, 1984, the court issued a Judgment and Decree (the court had retained continuing jurisdiction), based on the Bigman parties' stipulation, regarding the organization of the UNDC and Utah Navajo Industries, Inc. (UNI). (Dec. 5, 1984 J. & Decree, attached as Ex. 75 to Docket No. 870; Nov. 29, 1984 Stipulation of Parties, attached as Ex. 74 to Docket No.

11

870.)

Five years later, in 1989, the Bigman court issued a Stipulation and Joint Motion and
Order granting the UNI additional time to repay money it owed to the Navajo Trust Fund.  (See
Dec. 18, 1989 Order, attached as Ex. I to Docket No. 972.)  The record does not show any further
court activity in the Bigman case.

Two years later, a legislative audit of the Trust Fund, which was ordered by the Utah
State Legislature, was released.

**C.**     **1991 Audit Report to Utah State Legislature Concerning the Trust Fund**

In November 1991, the Auditor for the Utah State Legislature issued a report entitled "A
Performance Review of the Utah Navajo Trust Fund" ("Audit Report").  According to the
authors of the report, the audit "was requested by [Utah State] Representative David Adams.  We
were asked to investigate allegations of mismanagement and fraud involving Utah Navajo
Industries or any of its subsidiaries, Utah Navajo Development Council, and the Utah Division of
Indian Affairs.  In addition, we were asked to determine whether the trust fund is receiving all the
oil royalties to which it is entitled."  (1991 Audit Report (attached to Utah's 1st Supplemental
Accounting, Vol. PA-2, Tab 20) at 4.)

The Audit Report listed problems with some expenditures and contended that the "state's
administration of the trust fund needs to be improved.  While many benefits have been realized,
some poor expenditure decisions have also been made." (Id. at 18.)  The Plaintiffs, upon
reviewing the contents of the Audit Report, filed their complaint in this case.  (See Pls.' Verified
Compl. ¶¶ 4, 35; Pls.' Mem. Supp. Mot. Partial Summ. J. (Docket No. 1217/1218) at 42.)

**D.** **The Beneficiaries' 1992 Complaint in This Case and the State's  Affirmative Defenses**

In June 1992, the Plaintiffs, on behalf of themselves and other beneficiaries, filed a

Verified Complaint alleging a class action against the State of Utah.  (Pls.' Verified Compl.)  The

"causes of action" are listed under a section entitled "Grounds For Equitable Relief" (see id. at

16) and are labeled as follows: (1) Accounting; (2) Delegation of Duties; (3) Conflicts of Interest;

(4) Self-Dealing; (5) Interest and Investment; (6) Compensation (under which Plaintiffs allege

that the State of Utah "is liable to reimburse the Utah Navajo Trust Fund for all Fund assets

spent, lost and wasted in paying any fees and costs associated with administering the Fund"); and

(7) Litigation Costs.

In the Verified Complaint, the Plaintiffs allege that they are

> seeking an order compelling Defendant to render a complete and detailed
> accounting of the Utah Navajo Trust Fund, and damages stemming from the
> State's mismanagement of said Trust Fund [which resulted in injuries to the
> beneficiaries] caused by Defendant's breach of trust, squandering of Trust assets
> and violation of the 1933 Act [creating the trust]. . . . Plaintiffs hereby give notice
> that when facts establishing Defendant's misconduct become more clear,
> Plaintiffs will seek leave to amend this Complaint to include appropriate causes of
> action and damage claims.

(Id. at 2.)  They then emphasize the equitable nature of their claims:

> This is an action in equity by virtue of the fact that Plaintiffs seek only equitable
> remedies flowing from Defendant's breach of trust.  To wit, Plaintiffs seek
> prospective relief in the form of an order compelling Defendant to perform a
> detailed accounting of the Utah Navajo Trust Fund, and Plaintiffs seek
> replenishment of the fund for resources lost through Defendant's breach of
> fiduciary duty.

(Id. ¶ 8; see also id. ¶¶ 36-39 (listing "Grounds for Equitable Relief"), ¶ 53 (alleging liability for

"any loss or depreciation in the Trust estate of the Utah Navajo Trust Fund, together with any

profit which would have accrued to the Trust estate if there had been no breach of trust"), ¶ 61

("Defendant is liable to reimburse the Utah Navajo Trust Fund for all Fund assets spent, lost and

wasted in violation of the strict fiduciary duties imposed by the 1933 Act and Defendant's trust

and fiduciary obligations.").)  In the "Relief" section of the Verified Complaint, Plaintiffs

request, in addition to an accounting and a declaration of trustee liability, an award of "special

and compensatory damages[.]"  (Id. pp. 25-26.)

The State, in its Answer, raised various affirmative defenses, including the defenses that

Plaintiffs' claims are barred by laches and the statute of limitations.

**E.      March 31, 1999 Order Dismissing Laches and Statute of Limitations Defenses**

In 1999, the court considered cross-motions for judgment on the pleadings concerning the

Plaintiffs' accounting claims and the State of Utah's defense that the accounting claims were

barred by the doctrine of laches and the statute of limitations.  The court denied Utah's motion

but granted the Plaintiffs' motion, thereby dismissing Utah's laches defense for failure to state a

claim and Utah's statute of limitations defense because it was inapplicable as a matter of law.

(See Mar. 31, 1999 Mem. Decision (Docket No. 522) [the "1999 Order"].)  The State of Utah

seeks reconsideration of the 1999 Order.

**F.      Status of the Current Accounting**

The accounting is not yet complete and may not be for many more months, although on

August 19, 2008, the State of Utah submitted a full accounting for fiscal years 1987 through

1991.  The State is in the process of completing the accounting for earlier fiscal years.  The

deadline for Plaintiffs to submit exceptions to the first phase of the accounting, however, has not

yet been determined because other issues remain pending.  When (and if) the Plaintiffs do make

exceptions, the State of Utah will have the opportunity to file a response to each exception.  In its present motion, the State argues that the merits of the laches and statute of limitations defenses should be resolved at that point and not earlier.

## II. ANALYSIS

**A.**     **State of Utah's Motion for Reconsideration of the March 31, 1999 Order**

### 1.     Standard of Review

Rule 54(b) of the Federal Rules of Civil Procedure gives the court discretion to modify any order or decision in the case before final judgment is entered.  Specifically, it provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b) (emphasis added).  Under this rule, the court will reconsider the court's 1999 Order, which the State of Utah challenges.

### 2.     The Court Vacates the March 31, 1999 Order Dismissing Laches and Statute of Limitations Defenses Under Rule 12(c).

Utah seeks reinstatement of its affirmative defenses of laches and statute of limitations, but it also contends that the merits of those defenses should be addressed after the accounting process is complete.  On the other hand, Plaintiffs, who filed a motion for summary judgment, seek closure now on the issue of whether, as a matter of fact or law, laches and statute of limitations are valid defenses for the State of Utah in this case.

Upon review of the 1999 Order, the pleadings submitted by the parties at that time, the Verified Complaint, the Answer, and relevant case law, the court finds that the State of Utah

adequately pleaded the affirmative defenses of laches and statute of limitations in its Answer.

Accordingly, the court vacates the 1999 Order and reinstates the State of Utah's affirmative

defenses of laches and statute of limitations.  See, e.g., Fed. R. Civ. P. 8(c) ("In responding to a

pleading, a party must affirmatively state any avoidance or affirmative defense, including . . .

laches [and] statute of limitations[.]";  Ahmad v. Furlong, 435 F.3d 1196, 1201 (10th Cir. 2006)

(purpose of Rule 8(c)'s affirmative defense pleading requirement "is to give the opposing party

notice of the [defense] and a chance to argue, if he can, why the imposition of [the defense]

would be inappropriate.") (quoting Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found., 402 U.S.

313, 350 (1971)) (alterations in original);  Williams v. Ashland Eng'g Co. Inc., 45 F.3d 588, 593

(1st Cir. 1995)[6] ("Where . . . a plaintiff clearly anticipates that an issue will be litigated, and is

not unfairly prejudiced when the defendant actually raises it, a mere failure to plead the defense

more particularly will not constitute a waiver.");  Daingerfield Island Protective Soc'y v. Babbitt,

40 F.3d 442, 444-45 (D.C. Cir. 1994) (finding "bare assertion" of affirmative defense of statute

of limitations was adequate pleading under Rule 8(c) because it put opposing parties on notice of

affirmative defense and gave them opportunity to respond; "[W]hile a limitations defense must

'be asserted in a responsive pleading,' it 'need not be articulated with any rigorous degree of

specificity[.]'"), cited in Yoder v. Honeywell Inc., 104 F.3d 1215, 1224 n.3 (10th Cir. 1997);

Canadian St. Regis Band of Mohawk Indians v. New York, 278 F. Supp. 2d 313, 332 (S.D.N.Y.

2003) ("[o]rdinarily the applicability of laches involves a fact intensive inquiry, thus making it

improper to consider on a motion . . . which is confined to a review of the pleadings.");

---

[6]Abrogated on other grounds by Carpenters Local Union No. 26 v. United States Fid. &
Guar. Co., 215 F.3d 136 (1st Cir. 2000).

Emmpresa Cubana Del Tabaco, Culbro Corp., 213 F.R.D. 151, 154-55 (S.D.N.Y. 2003) ("Motions to strike affirmative defenses [which are sometimes presented as motions for failure to state a claim] are generally disfavored and should be denied unless there is a clear showing that the challenged defense has no bearing on the subject matter and that permitting the defense to stand would prejudice the plaintiff.") (internal citations and quotation marks omitted).

Still, even though the State's request for reconsideration has in a sense been granted, its success is short-lived.  That is, the court finds that the Plaintiffs' Motion for Summary Judgment is ripe for decision, and for the reasons set forth below, the court holds that the State's laches and limitations defenses fail as a matter of law and fact on grounds other than those stated in the 1999 Order.

## B.    Plaintiffs' Motion for Summary Judgment

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c);  see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670  (10th Cir. 1998).

### 1.    Utah Has Not Satisfied the Requirement for a Stay Under Rule 56(f).

The State of Utah filed the Rule 56(f) Affidavit of Philip Lott, through which it seeks a stay of decision on the summary judgment motion until Utah has had the opportunity to complete what it deems is necessary discovery.  (See Rule 56(f) Aff. of Philip S. Lott, attached as Ex. E to Def.'s Mem. Opp'n to Mot. Summ. J. (Docket No. 1299).)  Under Rule 56(f), the non-movant

may file an affidavit attesting to its inability to present facts essential to justify its opposition until further discovery is conducted.  If the 56(f) movant makes a satisfactory showing, the court may deny the motion for summary judgment or stay the motion until the non-movant has had an opportunity to develop necessary facts in opposition.  For the reasons set forth below, the court denies Utah's request for a stay under Rule 56(f).

Summary judgment is not granted "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1521 (10th Cir. 1992) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 250 n.5 (1986)).  By filing a Rule 56(f) motion, the party seeking to avoid summary judgment may thus "seek deferral of a summary judgment ruling pending discovery." Id. at 1521-22.  The affidavit submitted in support of such a motion must explain "with specificity how 'the desired time would enable [the party making the Rule 56(f) motion] to meet its burden in opposing summary judgment.'"  Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1554 (10th Cir. 1993) (internal citations omitted).  Moreover, "if the party filing the Rule 56(f) affidavit has been dilatory . . . no extension will be granted."  Id.

Utah contends that "the named Plaintiffs and other members of the plaintiff class may have possession or control of materials and/or knowledge of material fact that support Utah's position regarding the application of laches and the statute of limitations defenses in this case. Until Plaintiffs make their exceptions and further discovery is completed, Utah is unable to fully and completely respond to Plaintiffs' [motion for summary judgment]."  (Rule 56(f) Aff. of Philip S. Lott, attached as Ex. E to Def.'s Mem. Opp'n Pls.' Rule 56 Mot.)   But the Plaintiffs point out that when the parties had motions concerning the two affirmative defenses before the

18

court earlier in the case, they were given the opportunity to discover information concerning the statute of limitations and laches issues.  (See Mar. 16, 1998 Minute Entry (Docket No. 356) (lifting discovery stay and setting July 13, 1998, as cut-off date for discovery on issues of whether claims were time-barred); Apr. 1, 1998 Order (Docket No. 366) (ordering that "[d]iscovery with regard to pending motions regarding the statute of limitations shall be completed on or before July 13, 1998.").)  The State apparently did not take advantage of that opportunity.  (See Pls.' Mem. Supp. Rule 56 Mot. (Docket No. 1218) ¶¶ 40-48.)  Utah has not presented any explanation or evidence showing why it did not conduct discovery during that time.

Furthermore, the court disagrees with the State's suggestion that discovery on laches and statute of limitations issues should occur after Plaintiffs make exceptions to the State's accounting so that the State may examine and apply such defenses on a claim by claim basis at the exceptions stage in the accounting process.  At that point, as the court has ruled below, any claim that a particular exception is time-barred will not be supportable as a matter of law.

The court finds that Utah is not entitled to the stay and discovery it seeks.  Accordingly, the court finds the motion for summary judgment ripe for decision and now addresses its merits.

**2.     The Plaintiffs Are Entitled to Summary Judgment on Utah's Affirmative Defenses of Laches and the Statute of Limitations.**

   a.     The Remedies Plaintiffs Seek Are Equitable.

The threshold issue is whether the remedies Plaintiffs seek are solely equitable.  Upon review of the Verified Complaint, and considering the current pleadings of the Plaintiffs (in which they reiterate their intent to seek only equitable remedies), the court agrees with the

19

Plaintiffs' interpretation.

The Plaintiffs seek purely equitable remedies. Specifically, they seek reimbursement of Trust Funds improperly spent or managed and so lost or wasted. Although they purport to seek "special and compensatory damages" in their Complaint, the nature of their allegations and causes of action are related to their claim for accounting and are limited to equitable remedies.

The fact that they seek monetary reimbursement does not convert the claims to an action at law for damages. There is no dispute that a claim for an accounting is an equitable action. And reimbursement of Trust Funds lost through a breach of fiduciary duty by the trustee is consistent with remedies provided upon the completion of an accounting through a court decree that certain transactions resulted in an improper loss. As the United States Supreme Court observed in <u>Bowen v. Massachusetts</u>, 487 U.S. 879 (1988):

> Our cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay, or for "the recovery of specific property or *monies*, ejectment from land, or injunction either directing or restraining the defendant officer's actions." The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as "money damages."

<u>Id.</u> at 893 (emphasis in original; internal citations omitted). <u>See also</u> Bogert, Bogert, & Hess, <u>Law of Trusts & Trustees</u> § 970 (2008) ("The court, at the conclusion of an accounting proceeding, may make any order or decree which is deemed equitable. . . . On a final or intermediate account the court [among other things] may direct the trustee to replace trust funds . . . by way of reimbursement for breaches of trust . . . ."), § 870 ("A suit for equitable relief is applicable where the trust remains in existence and the suit is for the statement of an account and

20

the recovery of an unliquidated sum.").

The Plaintiffs here seek an accounting of money already deposited into the NTF and held in trust by the State of Utah.  That is, they seek a recovery of assets.

The situation here is somewhat similar to that in the Indian trust accounting case of Cobell v. Babbitt, 30 F. Supp. 2d 24 (D.D.C. 1998), in which a class of plaintiffs allege that the United States breached its fiduciary duty in its handling of Individual Indian Money (IIM) Trust accounts.  In Cobell, the court construed the plaintiffs' request for an accounting as an equitable claim arising "under the basic fiduciary relationship governed by the law of trusts.  This type of accounting is a standard equitable remedy within the law of trusts, in which the beneficiaries seek to compel the trustee to account for his stewardship of the trust res."  Id. at 42.  See also Navajo Tribe of Indians v. United States, 624 F.2d 981, 986 (Ct. Cl. 1980) (construing beneficiary's claim that trustee failed to provide educational and other services to Navajo Indians to be part of the Tribe's general accounting claim because it was related to management and use of trust assets);  Restatement (Second) of Trusts § 199(c) (1959) ("The beneficiary of a trust can maintain a suit . . . to compel the trustee to redress a breach of trust.").

Moreover, the unique nature of the NTF, as interpreted by the United States Supreme Court and the Tenth Circuit, supports the conclusion that Plaintiffs are limited to equitable remedies.  Specifically, two separate decisions interpreting the 1933 Act—one by the United States Supreme Court and the other by the Tenth Circuit—support the conclusion that the beneficiaries are not entitled to any direct payment of money, but, rather, the State is to spend the Trust Funds "for the health, education, and general welfare of the Navajo Indians residing in San Juan County."  See 1933 Act.

21

The first opinion was issued by the United States Supreme Court in <u>United States v. Jim</u>,

409 U.S. 80 (1972).  After Congress expanded the reach of the Trust by passing the 1968

Amendment to expand the pool of beneficiaries, a class action was brought on behalf of Aneth

Extension residents (beneficiaries of the Trust) seeking a court declaration that the 1968

Amendment was an unconstitutional taking of property without just compensation.  <u>Id.</u> at 82.

The district court held that the 1933 Act "vested certain property rights in the plaintiffs, and held

the 1968 Act, with its changed pool of beneficiaries, to be unconstitutional."  <u>Id.</u> at 81-82.  The

Supreme Court reversed, holding that

> <u>Congress in 1933 did not create constitutionally protected property rights in the
> appellees</u>.  The Aneth Extension was added to a tribal reservation, and the leases
> which give rise to mineral royalties are tribal leases.  It is settled that "[w]hatever
> title the Indians have is in the tribe, and not in the individuals, although held by
> the tribe for the common use and equal benefit of all the members."  To be sure,
> the 1933 Act established a pattern of distribution which benefited the appellees
> more than other Indians on the Navajo Reservation.  But it was well within the
> power of Congress to alter that distributional scheme. . . . Congress has not
> deprived the Navajo of the benefits of mineral deposits on their tribal lands.  It has
> merely chosen to re-allocate the 37½ % of royalties which flow through the State
> in a more efficient and equitable manner. . . . As <u>no "property," in a Fifth
> Amendment sense, was conferred upon residents of the Aneth Extension by the
> 1933 Act</u>, no violation of the Fifth Amendment was effected by the 1968
> legislation.

<u>Id.</u> at 82-83 (internal citations omitted; emphasis added).

Then, in 1996, the Tenth Circuit held that although the beneficiaries here had no vested

property interest in the NTF (as the Supreme Court held in <u>Jim</u>), the 1933 Act nevertheless

implied a cause of action by the beneficiaries against the State for breach of fiduciary duty.  <u>Pelt</u>

<u>v. Utah</u>, 104 F.3d 1534, 1537 (10th Cir. 1996).  In its opinion, the Tenth Circuit cited to <u>Jim</u>,

noting that the appellate court's holding was consistent with <u>Jim</u>, in part because "no title is

necessary for the San Juan Navajos to have an <u>equitable</u> cause of action as beneficiaries of the

fund." <u>Id.</u> at 1542 n.9 (emphasis added).  The appellate court, while noting the discretion the

State has as trustee, also cited to the Restatement (Second) of Trusts § 199 (1959) (outlining

equitable remedies available to trust beneficiaries), apparently to indicate that there is a limit to

that discretion and that an action in equity may be appropriate.  <u>Id.</u> at 1544 n.10.

Given the equitable nature of Plaintiffs' claims, it is not clear that the court needs to

engage in a statute of limitations analysis because the doctrine of laches typically governs

equitable actions instead.  For example, the United States Supreme Court noted in <u>Holmberg v.</u>

<u>Albrecht</u>, 327 U.S. 392 (1946), that "[t]raditionally and for good reasons, statutes of limitation

are not controlling measures of equitable relief.  Such statutes have been drawn upon by equity

solely for the light they may shed in determining . . . whether plaintiff has inexcusably slept on

his rights so as to make a decree against the defendant unfair."  <u>Id.</u> at 396 ("A federal court may

not be bound by a State statute of limitation and yet that court may dismiss a suit where the

plaintiffs' 'lack of diligence is wholly unexcused; and both the nature of the claim and the

situation of the parties was such as to call for diligence.'") (internal citation omitted).  The Tenth

Circuit explained a similar approach in the 1945 decision of <u>McCallum v. Anderson</u>:  "While

statutes of limitation are not strictly applicable to equitable actions, they are helpful as an

analogous guide in the application of the equitable rule of laches."  147 F.2d 811, 815 (10th Cir.

1945).  <u>See also</u> <u>County of Oneida, New York v. Oneida Indian Nation of New York</u>, 470 U.S.

226, 240-41 (1985) (holding that "no federal statute of limitations governs federal common-law

actions [concerning] Indian land claims.");  <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151,

162 (1983) (noting that <u>Holmberg</u> court declined to apply state statute of limitations to federal

cause of action "lying only in equity, because the principles of federal equity are hostile to the 'mechanical rules' of statutes of limitations."). But see, e.g., Christensen v. United States, 755 F.2d 705, 708 (9th Cir. 1985) (holding that federal statute of limitations in 28 U.S.C. § 2401(a), which is jurisdictional, applies to equitable as well as legal claims brought by Native Americans against the United States); Urabazo v. United States, 947 F.2d 955 (10th Cir. 1991) (unpublished table opinion) (citing Christensen for same proposition); Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 588, 592 (9th Cir. 1990) (same).

Because the parties have addressed both modes of barring relief, and because the law has developed significantly since traditional equity rules were applied in Holmberg, the court will address the merits of both affirmative defenses. Ultimately, under either analysis, the outcome is the same.

> b.   Plaintiffs' Claims Are Not Time-Barred Because No Limitations Period Has Begun to Accrue.

>> (i)   *What, If Any, Statute of Limitations Applies?*

The 1933 Act does not contain a statute of limitations.

> In such a situation, [courts] do not necessarily assume that Congress intended that there be no time limit on actions at all; rather, [the court's] task is to "borrow" the most suitable statute or other rule of timeliness from some other source. We [the United States Supreme Court] have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law.

DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 158 (1983). But if application of an analogous state statute of limitation is "at odds with the purpose or operation of federal substantive law," then the court may decline to apply the state time limitations and instead draw a statute of limitations from related federal statutes or apply the doctrine of laches as an alternative.

Id. at 161-62 (noting that state statute must not frustrate or interfere with implementation of national policies).

Utah applies a four-year statute of limitation to claims brought by a beneficiary against a trustee.  Snow v. Rudd, 998 P.2d 262, 265, 268 (Utah 2000); District 22 United Mine Workers of Amer. v. Utah, 229 F.3d 982, 991 (10th Cir. 2000) (citing Snow v. Rudd).  That four-year statute of limitations, which is set forth in Utah Code Section 78B-2-307(3) (formerly Utah Code Section 78-12-25(3)), appears to be the most analogous state statute here.  But the court finds that application of Utah's four-year statute would be inconsistent with, and interfere with, national policies and federal law governing Indian trust cases.

Indian trust cases filed against the federal government as trustee are generally governed by a longer federal six-year statute of limitations.  See 28 U.S.C. § 2401(a) ("every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."); Loudner v. United States, 108 F.3d 896, 901 (8th Cir. 1997) (holding that 28 U.S.C. § 2401(a) applies to Indian trust beneficiaries in trust-based claims against the United States); Cobell v. Norton, 260 F. Supp. 2d 98, 104 (D.D.C. 2003) (applying § 2401 to claims for accounting but noting that key issue was whether claims had accrued for purposes of the statute of limitations).  Application of the shorter four-year limitations period to rights and claims created by federal law[7] for Indian trust beneficiaries would be inconsistent with federal law.

---

[7]See Pelt v. Utah, 104 F.3d 1534, 1543 (10th Cir. 1996) (holding that through enactment of the 1933 Act, as amended by 1968 Act, Congress created a trust-like relationship and a corresponding right of the beneficiaries to bring a breach of trust action against Utah).

In many ways, the State of Utah is acting in a role analogous to the federal government's trustee role and has been treated as such by orders of this court.[8]  But for the trustee's status as a state government, any claim the Plaintiffs would typically have as Indian trust beneficiaries would be brought against the federal government and be subject to the longer six-year limitations period.  Accordingly, the most analogous statute of limitations is the six-year statute set forth in 28 U.S.C. § 2401(a).

Furthermore, federal law provides a series of rules concerning statute of limitations that are specifically applicable to Indian trust cases, which is a uniquely federal area of law.  See Pelt v. Utah, 104 F.3d 1534, 1544 (10th Cir. 1996) ("The overriding legal area implicated in this case is the care of Native Americans – a uniquely federal question.  See, e.g., [United States v.] Mitchell, 463 U.S. 206, 103 S. Ct. 2961 [(1983)];  [State of Utah v.] Babbitt, 53 F.3d 1145 [(10th Cir. 1995)]. . . .  We find that this case involves an area of law not within the purview of the states, but rather one that is solidly within the federal realm.")  Although Utah applies a version of the "discovery rule" to statute of limitations concerning a trust beneficiary's breach of trust claims against a trustee,[9] application of the federal rules discussed below is more appropriate in

---

[8](See, e.g., July 5, 2006 Order & Mem. Decision (Docket No. 1056) (imposing accounting burdens on the State as set forth in federal Indian trust accounting cases where the federal government is the trustee).)  Indeed, the court has already held that where the 1933 Act is silent on an issue confronting the court, the court should fill in the gaps with traditional trust principles "derived [first] from the [federal] Indian accounting cases and more generally from the common law of trusts . . . insofar as these principles do not contradict the express language of the 1933 Act."  (July 18, 2001 Order (Docket No. 792) at 3.)

[9]The Utah Supreme Court has held that

when a case involves a trust, a trustee cannot take advantage of a statute of limitations defense until something has occurred to give the beneficiary a 'clear indication' that a breach or repudiation has occurred, or, alternatively, the

the context of Plaintiffs' federal trust claims.

  (ii) *No Statute of Limitations Has Begun To Accrue Because the Trust Has Not Been Repudiated and a Full Accounting Has Not Been Completed.*

  The court's analysis has two parts.  First, the court must determine when, as a matter of law, the statute of limitations begins to accrue on the Plaintiffs' accounting and breach of fiduciary duty claims.  Second, the court must determine whether the facts support a finding that accrual has occurred.

  The first part of the analysis requires determining when a claim begins to accrue for purposes of the statute of limitations.

> A cause of action for breach of trust traditionally accrues when the trustee "repudiates" the trust and the beneficiary has knowledge of that repudiation. . . . A trustee may repudiate the trust by express words or by taking actions inconsistent with his responsibilities as trustee.  The beneficiary, of course, may bring his action as soon as he learns that the trustee has failed to fulfill his responsibilities.  It is often the case, however, that the trustee can breach his fiduciary responsibilities of managing trust property without placing the beneficiary on notice that a breach has occurred.  <u>It is therefore common for the statute of limitations to not commence to run against the beneficiaries until a final accounting has occurred that establishes the deficit of the trust</u>.

<u>Shoshone Indian Tribe of the Wind River Reservation v. United States</u>, 364 F.3d 1339, 1348 (Fed. Cir. 2004) (internal citations omitted; emphasis added).  <u>See also</u> <u>Cobell v. Norton</u>, 260 F. Supp. 2d at 105 (noting that above-cited rule is "well-established in recognized treatises on trust

---

> circumstances must be 'such that [the beneficiary] must be charged with knowledge' of such a repudiation or breach.  In other words, a statute of limitations period will not begin to run until the beneficiary knows or through reasonable investigation could have learned of a breach or repudiation.

<u>Snow v. Rudd</u>, 998 P.2d 262, 266 (Utah 2000) (internal citations omitted).

law"); Manchester Band of Pomo Indians, Inc. v. United States, 363 F. Supp. 1238, 1249 (N.D. Cal. 1973) (applying traditional accrual rule and citing United States v. Taylor, 104 U.S. 216 (1881), in support); Bogert § 964 ("Unless there is a statute expressly governing the matter of time within which a suit for accounting can be brought, the rules with regard to the Statute of Limitations and the enforceability of trusts in general apply, and the time period will not run against the right to an account until a repudiation and actual or constructive notice thereof.").  A review of Indian trust cases addressing a statute of limitations issue convinces the court that the above-quoted rule applies to this case.[10]

For example, in Cobell v. Norton, an Indian trust accounting case similar to the one here, the court held that the six-year statute of limitations set forth in 28 U.S.C. § 2401 did not begin to accrue until the trust was repudiated or a full and meaningful accounting had been provided to the beneficiaries.  260 F. Supp. 2d 98, 104-09 (D.D.C. 2003).  The Cobell court found that the United States was not entitled to summary judgment on the basis of a statute of limitations defense, noting that the government had not repudiated the trust because it was "giving continuing consideration to appellant's eligibility" under the express trust.  Id. at 106.

---

[10]Some decisions coming out of the United States Claims Court (and the appellate court of the United States Federal Circuit) recognize an exception that "claims for misfeasance or nonfeasance as opposed to claims for recovery of the trust corpus" are subject to a different standard.  See, e.g., Jones v. United States, 9 Cl. Ct. 292, 295 (1985).  But the United States Court of Federal Claims is a court of limited jurisdiction that does not include jurisdiction over equitable claims such as the one here.  See Tucker Act, 28 U.S.C. § 1491(a)(1) (stating that the Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.");  Chippewa Cree Tribe of Rocky Boy's Reservation v. United States, ___ Fed. Cl. ___, 2009 WL 349809, Case No. 02-6751-L (Fed. Cl. Feb. 10, 2009).

Also, in <u>Shoshone Indian Tribe of the Wind River Reservation v. United States</u>, the court rejected the government's statute of limitations defense against Indian tribes' allegations of mismanagement of sand and gravel resources held in trust by the United States.  364 F.3d 1339 (Fed. Cir. 2004).  The United States, citing to 28 U.S.C. § 2501 (a corollary to the six-year statute of limitations in 28 U.S.C. § 2401), contended that the tribes' claims more than six-years old were time-barred.  In response, the tribes cited to an appropriations act for the Department of Interior that provided the following:

> [N]otwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim . . . concerning losses to or mismanagement of trust funds, until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss.

Pub. L. No. 108-7 (2003), quoted in <u>Shoshone</u>, 364 F.3d at 1344.  The <u>Shoshone</u> court noted that Congress had enacted similar versions every year beginning in 1990 (at least until 2003, when the case was considered).  The court also noted that Congress' express rule on accrual of Indian trust claims tracked the traditional trust rule that accrual occurred only upon repudiation or upon completion of an accounting.  <u>Shoshone</u>, 364 F.3d at 1344, 1348.  "The clear intent of the [appropriations] Act [was] that the statute of limitations will not begin to run on a tribe's claims until an accounting is completed."  <u>Id.</u> at 1347.

The court finds the evidence of Congressional intent concerning treatment of Indian trust claims to be further persuasive evidence that, absent repudiation, the statute of limitations should not be held to have accrued on the Plaintiffs' claims until a final, meaningful accounting has been

provided.[11]  As the Shoshone court noted, "[t]his is simple logic—how can a beneficiary be aware of any claims unless and until an accounting has been rendered?"  Id.

Having determined what triggers accrual of the statute of limitations, the second part of the analysis requires determining whether, given the facts in the record, the trust has been repudiated.  If so, the question is whether the beneficiary knew of should have known of the repudiation.  If not, the question is whether an accounting has been completed.

Repudiation of a trust occurs when the trustee expressly terminates the fiduciary relationship or takes actions inconsistent with the terms of the trust (for example, by claiming or taking the corpus of the trust as its own and denying any obligation to the beneficiary).  E.g., Loudner, 108 F.3d at 901 n.2 ("trustee repudiates the trust by claiming to hold the trust corpus as the trustee's own"); Cobell, 260 F. Supp. 2d at 106 (repudiation of express trust must be clear and continuing act to prevent the beneficiary from enjoying benefits of trust); Jones, 9 Cl. Ct. at 295-96 (finding repudiation when government caused tribe to be divested of most of trust land over forty-year period, and stating generally that repudiation occurs when "entitlement to the corpus (or a portion thereof) is claimed adversely to the beneficiary").

---

[11]Given that the Plaintiffs' claims lie in equity, any exception to the accrual rule recognized by the Court of Federal Claims is not applicable here.  See Jones, 9 Cl. Ct. at 296 (suit for damages arising from misfeasance of trustee is "fundamentally different" from a case where plaintiff seeks return of what already belongs to him).  See also Cobell v. Norton, 260 F. Supp. 2d 98, 107-08 (D.D.C. 2003) ("It is true that the Federal Circuit appears to have adopted an exception to the rule that the statute of limitations does not run unless the trustee has repudiated the trust's existence in cases involving claims for damages that allege nonfeasance or misfeasance on the part of the trustee.  See, e.g., Cherokee Nation of Okla. v. United States, 21 Cl. Ct. 565, 571 (1990).  Because this unwarranted 'exception' runs against the grain of fundamental trust law principles, however, it has apparently not been adopted in any other Circuit, and this Court will not do so now.").

But even given acts constituting repudiation, no accrual occurs unless the beneficiary knows, or should have known, of the trustee's repudiation of the trust.  Furthermore, the court must consider that "the beneficiary is entitled to rely upon the good faith and expertise of the trustee, [and so] the beneficiary's duty to discover claims against the trustee is somewhat lessened."  Loudner, 108 F.3d at 901 (citing Manchester Band of Pomo Indians v. United States, 363 F. Supp. 1238 (N.D. Cal. 1973)).

The facts here do not establish repudiation.  Despite evidence that the State failed to provide an adequate (or any) accounting in earlier years, that is not sufficient to show repudiation.  Utah continued to collect royalties from the federal government, place them in the trust account, and spend the money purportedly for the benefit of the beneficiaries.  The question has not been whether the beneficiaries have rights under the trust but whether the State has provided an accounting or properly carried out its discretion under the 1933 Act.

Because the court holds that the State of Utah has not repudiated the Trust, there is no need to determine whether the beneficiaries were on notice of any repudiation.  Furthermore, there is no dispute that the accounting is not yet complete.  Accordingly, the applicable statute of limitations has not begun to accrue and Plaintiffs' equitable claims are not time-barred.[12]

c.    The Doctrine of Laches Does Not Bar Plaintiffs' Claims.

The State of Utah also contends that the doctrine of laches bars Plaintiffs' claims.  To succeed on its defense of laches, the State must show "inexcusable delay in instituting suit" on the part of the Plaintiffs and "prejudice resulting to the defendant from such delay."  Potash Co.

---

[12]Because the court finds that the statute of limitations has not begun to accrue, it does not reach the issue of equitable tolling raised by the Plaintiffs.

of Amer. v. International Minerals & Chem. Corp., 213 F.3d 153, 154 (10th Cir. 1954).  See also

City of Sherrill, NY v. Oneida Indian Nation of NY, 544 U.S. 197, 217 (2005) ("It is well

established that laches, a doctrine focused on one side's inaction and the other's legitimate

reliance, may bar long-dormant claims for equitable relief.").

Mere lapse of time does not establish laches.  Potash Co., 213 F.3d at 154.  Principles of

equity control and the question of laches is left to the court's sound discretion, considering all the

facts and circumstances of the particular case and balancing the equities.  Id. at 155.

> No absolute rule can be laid down by which to determine what constitutes laches
> or staleness of demand.  Each case must be determined according to its own
> peculiar circumstances.  Since laches is an equitable doctrine, its application is
> controlled by equitable considerations.  It cannot be invoked to defeat justice and
> will be applied as a defense only where the enforcement of the asserted right
> would work injustice.

Id. at 154-55.

Laches should not be used to bar a plaintiff's claim if the plaintiff has been "justifiably

ignorant of facts which create his right or cause of action."  Id. at 155.  But the plaintiff must be

diligent, and if he has knowledge, or under the circumstances should have knowledge, of a claim,

a court may find that the plaintiff unjustifiably sat on his rights to the detriment of the defendant.

On the other hand, the court must consider the well-known maxim that "he who comes

into equity must enter with clean hands," which is also referred to as the "clean-hands doctrine"

or the "unclean-hands defense."  Wright, Miller & Kane, Federal Practice & Procedure § 2946

(2008).  For example, "[i]f the party which advances the defense of laches is responsible for the

delay or contributes substantially to it he cannot take advantage of it."  Potash Co., 213 F.2d at

155.

In Cobell v. Babbitt (a 1998 decision in the same Indian trust accounting case discussed above), the district court stated that, "[i]n general, the time period for a laches analysis cannot begin to run until a repudiation of the trust has occurred and the plaintiffs have actual notice of it." 30 F. Supp. 2d 24, 45 (D.D.C. 1998) (citing Bogert § 964 (rev. 2d ed. 1983)).  In a follow-up decision, the court rejected the defendants' laches defense against the accounting claim for transactions that occurred six years before the suit was filed, reasoning that the defendants failed to demonstrate that repudiation of the trust had occurred.  Cobell v. Norton, 260 F. Supp. 2d at 110 (citing Bogert § 964 (rev. 2d ed. 1985)).  See also McCallum v. Anderson, 147 F.2d 811, 815 (10th Cir. 1945) ("While statutes of limitation are not strictly applicable to equitable actions, they are helpful as an analogous guide in the application of the equitable rule of laches. Although a beneficiary is not barred merely by lapse of time from enforcing an express trust, if the trustee repudiates the trust to the knowledge of the beneficiary, laches operates to bar the enforcement of a trust obligation when the beneficiary fails to sue the trustee for breach for so long a time, and under such circumstances that it would be inequitable to permit him to hold the trustee liable.").  Under this rule, and given the court's finding that no repudiation has occurred, the State of Utah is not be entitled to a laches defense.

But even if the court goes beyond the rule of law stated above and balances the equities arising out of the circumstances and actions of the parties from the late 1950s through 1992 (when the present suit was filed), the conclusion is the same.  The Plaintiffs justifiably relied on the State's representations throughout the earlier litigation (from Sakezzie, to Jim, to Bigman) that the State would perform an accounting.  The courts ordered the State to do so.  "When Government action is involved, members of the public are entitled to assume public officials will

act in accordance with law."  Jicarilla Apache Tribe v. Andrus, 687 F.2d 1324, 1338 (10th Cir. 1982).  And, as pointed out in Shoshone, "how can a beneficiary be aware of any claims unless and until an accounting has been rendered?"  364 F.3d at 1347.

The State, as Trustee, has a continuing obligation to account to its beneficiaries.  Yet it contends, unpersuasively, that it would be prejudiced by having to produce an accounting for the years sought by Plaintiffs.  This is not a situation where the trustee legitimately relied on the beneficiaries' inaction.  It would be unreasonable to suggest that the beneficiaries were not diligent because they were unsuccessful in their efforts to compel the State to account through lawsuits (in which the court found they were inadequately represented) or that the State was unaware of its own obligations and the problems posed by its failure to properly account.  The State was at least partially responsibility for the beneficiaries' inability to discover and act upon potential breaches of trust.  Despite numerous good faith attempts from 1961 through 1990, the beneficiaries never received the information necessary to constitute actual or constructive knowledge of any specific breach of trust sufficient to state a claim in court.  See, e.g., Restatement (Second) of Trusts § 219(1) cmt. f (1959) ("If the beneficiary has delayed bringing suit as a result of promises of the trustee to redress the breach of trust, he will not be barred as soon as he would be barred if he had not been induced to delay suit by such promises.").

For the foregoing reasons, the court holds that the State of Utah is not entitled to assert the defense of laches against the Plaintiffs.

## **ORDER**

For the foregoing reasons, the court ORDERS as follows:

1.        The State of Utah's Motion for Reconsideration (Docket No. 1209) is GRANTED

IN PART AND DENIED IN PART.  The court's March 31, 1999 Order (Docket No. 522) is hereby VACATED.

    2.      The State of Utah's request for a stay under Federal Rule of Civil Procedure 56(f) is DENIED.

    3.      Plaintiffs' Rule 56 Motion to Dismiss Utah's Laches and Statute of Limitations Claims (Docket No. 1216) is GRANTED.

    DATED this 25th day of March, 2009.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge

35